BARSTOW *vs.* GOODWIN.

*In the matter of the Estate of* BENJAMIN LORD, *deceased.*

THE testator directed his executors to take possession of his estate, real and personal, and to pay to M. V. V. the net income to be derived from his store in Cedar Street. The premises in question were sold and conveyed by the testator, in his lifetime,· and a bond and mortgage taken for the consideration money,—Held, that the devise was revoked by the conveyance.

In case of a devise to brothers and sisters surviving at the testator's decease and the *descendants* of such as should then be dead, such *descendants* to take the share or portion which would have otherwise belonged "to such deceased *parent,*"—at the testator's death there were four surviving sisters,—and descendants, children and grand-children, of six deceased brothers and sisters,—Held that the four sisters each took one tenth, and the descendants of each deceased brother and sister took one tenth.

The term descendants properly includes every person descended from the stock referred to. A devise to descendants *equally* to be divided between them, embraces all the descendants of every degree, *per capita.*

Whether descendants are to take *per capita* or *per stirpes* is, however, a question of intention, to be judged of by the will. A devise to descendants of the share of their deceased *parent,* in connection with other portions of the will tending to show that the testator looked to the principle of representation, may restrain the import of the term descendants to children and the descendants of children, so that they take *per stirpes,* and not *per capita.*

E. C. BENEDICT, *for Executor.*
CHAS. A. PEABODY, JOSEPH DANE, C. W. WOODMAN, *for Legatees.*

THE SURROGATE. The testator, after directing the payment of his debts, disposed of his estate as follows: "Second, it is my will that my executors, hereinafter named, or the survivors or survivor of them, or such of them as shall act for the time being, shall take possession of all my present and hereafter to be acquired estate, real and personal, and receive

allrents, interest, dividends, and income thereof; and out of the same keep the said real estate in repair, and pay the charges thereon; and keep the personal estate invested, and call in and re-invest the same from time to time, as they shall, in their judgment, think most for the interest of my estate; and distribute, divide, and pay over the said nett income as follows: To Mary Van Veghten, . . . the nett income to be derived from my store, number one hundred and forty-seven Cedar Street, in the city of New York . . . out of the residue and remainder of said nett income of my said estate, pay to Sarah Louisa Reed . . . the sum of two thousand dollars a year, during her natural life; all the rest, residue and remainder of the nett income of my estate pay over to, and distribute and divide among my brothers and sisters who shall be then surviving, and the descendants of such as shall then be dead, and my brother-in-law, Caleb Knapp, of North Stamford, in the State of Connecticut, equally. That is to say, if any of my brothers and sisters shall be dead, leaving them surviving any descendant or descendants, then, such descendant or descendants shall take the share or portion which would otherwise have belonged to such deceased parent. And in case the said Caleb Knapp shall be then dead, leaving him surviving his wife Lavinia, then such share to be paid to her, and if she be dead, then to her descendants. *Third*, upon the death of Mary Van Veghten aforesaid, it is my will that my store, No. 147 Cedar St., be sold, and the proceeds thereof and arising therefrom be equally divided among my brothers and sisters and Lavinia Knapp, wife of the said Caleb Knapp, in the same manner as if the said Lavinia was my own sister and I had died intestate; and, in case either of my brothers or sisters, or the said Lavinia Knapp, shall then be dead, leaving surviving any descendant or descendants, that then and in such case such descendant or descendants shall take the share or portion which would otherwise have belonged to such

parent, the share of the said Lavinia Knapp being subject to the life interest of the said Caleb Knapp therein. The income alone of the said share of Lavinia Knapp shall be paid to her said husband during his natural life, and after his death to the said Lavinia Knapp, and after her death her share to be divided among her heirs. *Fourth,* upon the death of the said Sarah Louisa Reed, it is my will that the whole of the rest, residue, and remainder of my estate, both real and personal, be equally divided among the same persons and in the same manner as directed in the next preceding article of this my will."

The executors were authorized to sell the real estate, if, in their judgment necessary " in order to distribute and divide the same."

The store in Cedar Street, the income of which was given by the second article of the will to Mary Van Veghten, was sold by the testator in his lifetime, and a bond and mortgage were taken for the consideration money. This conveyance effected a revocation of all the devises and provisions contained in the will relative to that lot. This was the rule at common law, and it is recognized by the Revised Statutes. ( *Adams* vs. *Winne, 7 Paige,* 97 ; 2 *R. S., p.* 65, § 40 [48], 41 [49], 1 *Jarmin,* 130). The title of the testator was wholly divested, by his own act; by the conveyance, he parted with the property; and there is nothing for the devise to act upon. If there had been no will, nothing would have descended to his heirs. The subject-matter is gone, and no substitute has been expressly provided. The alteration was made by the deed, and the provisions of that instrument were wholly inconsistent with the terms and nature of such previous devises. (2 *R. S., p.* 65, § 40.)

The net income of the estate, after paying the annuity to Mrs. Reed, is to be divided among the testator's brothers and sisters," then surviving," and his brother-in-law, equally. If any brother or sister died before the testator, without issue, there would be no lapse, but the survivors would

take an increased amount. If any had died leaving issue, the issue was to be substituted to the share of the parent. The gift, in such case, however, is made to the " descendants;" and the question naturally arises, who were intended by this term? Six of the testator's brothers and sisters were dead, at the time of his decease, and they had left children and grandchildren; was it designed that the children and grandchildren should take *per stirpes* or *per capita?* The term descendants properly includes every person descended from the stock referred to. Thus, a devise "to the descendants of Francis Ince," "to be *equally* divided amongst them," has been determined in favor of all the descendants *per capita*, and without reference to the degrees of kindred or to the rule of representation. (*Crossly* vs. *Clare*, *Amb.* 397.) A direction to distribute the proceeds of real estate " equally between the descendants of T. F., deceased," has been held to include all the descendants of T. F., children and grandchildren, *per capita*. (*Butler* vs. *Stratton*, 3 *Bro. C. C.*, 367.) The words " to be equally divided between them," in both the above devises, it may be observed, showed an intentio, ▶distribute, *per capita*. Such would be the effect of the word " equally;" as used in the second clause of the will now under consideration, were it not for the provision that the descendants shall take the share which "would otherwise have belonged to such deceased parent." The four surviving sisters of the testator will therefore take, each, one tenth of the income; and the descendants of the six deceased brothers and sisters will take the one-tenth their ancestor would have taken if living. But the point again arises, how shall these descendants take, *per stirpes* or *per capita?* The broad import of the term " descendants," is sometimes narrowed, where there is ground for judging that it was intended in a restricted sense. Thus the word "issue," which is co-extensive with " descendants," and includes every degree (*Davenport* vs. *Hanbury*, 3 *Ves.*, 257; *Freeman* vs. *Parsley*, 3 *Vesey*, 421;

*Oddie* vs. *Woodford*, 3 *My. & Cr.*, 584 ; *Bernal* vs. *Bernal*, *Id.*, 559), has been restrained to the sense of " children." (*Horsepool* vs. *Watson*, 3 *Vesey*, 383 ; *Farrant* vs. *Nichols*, 9 *Beav.*, 327 ; *Edwards* vs. *Edwards*, 12 *Beav.*, 97 ; *Swift* vs. *Swift*, 8 *Simon*, 168 ; *Goldie* vs. *Greaves*, 14 *Simon*, 348.) In *Sibley* vs. *Perry*, 7 *Ves.*, 522, the gift was to J. R. and M., if living, but in the event of death " the lawful issue of every one of them shall equally have and enjoy the share which their respective *parents*, if living, would have had ;" and Lord Eldon held that, as the word parent meant father or mother, the correlative term issue meant children. I have no doubt, in the present case, it was intended the children of deceased brothers and sisters should take, and not to let in children, grand-children, and, perhaps, great-grand-children, equally. He directs the division among his brothers and sisters and the descendants of those who should be dead, " *equally*," but immediately qualifies the provision by declaring that, if any of his brothers and sisters should be dead, leaving descendants, the issue should take only the share of the parent. So again, in the third clause of the will, which is in substantial harmony with the second clause, the gift is to his brothers and sisters, and Lavinia Knapp subject to the life-estate of her husband, to be equally divided " in the same manner, as if the said Lavinia had been my own sister and I had died intestate ;" and in case of the death of either of the brothers and sisters, leaving descendants, then such descendants to take the share which would have gone to " such parent," and in the case of Lavinia's death, her share to pass to her " heirs." In construing the words " descendants," " heirs," " such deceased parent," and " such parent," and having reference to the substitution of the " descendants " to the share of the " parent," and to the gift of Lavinia's share over to her " heirs," and bearing in mind that equality is carefully prescribed among the brothers and sisters, and omitted when speaking of their descendants,—I think we may reasonably

27

conclude the testator intended to regard each deceased brother and sister as a stock of descent, and while using the word "descendants" in the sense of children and the descendants of children still had regard to representation. On a strict construction, perhaps, only the children would take; but, a reasonable regard being had to the mode of division prescribed on the death of a brother or sister, that the descendants should take the share of "such parent;" and to the employment of the term "heirs" in the case of Lavinia, which, in respect to personal estate, is synonymous with "next of kin" (1 *Roper on Legacies*, 88), I am satisfied the nearest approximation to the intention will be attained by holding that the children of deceased children are entitled as "descendants," but only to the share of their deceased parent.   In *Stonor* vs. *Curwen*, 5 *Simon*, 273, where the words were, "devolve to her issue at her death," the Vice Chancellor held that children and grand-children would take *per stirpes;* saying, "It would be unreasonable to suppose that this testator, who evidently has looked to succession, could mean that a child of a deceased child should take co-extensively with the children." (*Cushney* vs. *Henry*, 4 *Paige*, 345.)   Of course, the effort in testamentary cases is always to strive after the testator's intention; and, in doing that, the court may fairly pay attention to the legitimate consequences of adopting a certain rule of construction, and inquire whether it is reasonable to suppose the testator contemplated an interpretation leading to irrational or inconvenient results.   It is true, that where the terms used are unequivocal, judicial speculation should not be indulged; but when terms of general and comprehensive meaning have, in certain relations, been used in a restricted sense, a construction accommodated to both senses seems to come nearest the intention of the testator.   Whilst holding, therefore, that the term descendants is sufficiently broad to let in children and grand-children, yet, the use of the term "descendants" as a correlative of "parents," in connection with other indica-

tions of the establishment of the principle of representation by the testator, is sufficient to restrain the general import of the word " descendants," so that grand-children, whose parents were living, could not take with their parents. This lets in children to equal shares, and grand-children to the share their parents would have taken if living. The decree should, therefore, declare that the income of the estate became vested, on the testator's decease, in the brothers and sisters then living, and the descendants of those then dead, *per stirpes*. The share of the income bequeathed to Caleb Knapp, on his decease became vested in his wife, and, on her decease, will pass to her heirs or next of kin. This construction might be doubtful, looking at the second clause of the will alone ; but it is obvious, by reference to the third clause, that Caleb Knapp's interest in the income was designed to last for his life only.

In respect to the division of the principal of the estate, on the decease of Sarah Louisa Reed, I am of opinion that the descendants of such brothers and sisters of the testator as were dead at his decease, took on the testator's death absolute vested estates; and the decree must provide for the division of the principal among them, upon the same principles as already stated in respect to the income. If any of the testator's brothers or sisters should be living at the time of the division of the principal, they will take equal shares, absolutely. If they should happen to have died, leaving issue, their descendants living at the time of their decease will take the shares of their ancestors, *per stirpes*, on the same principles as laid down in relation to the division of the income.

The share of Mrs. Knapp in the principal will not, however, pass to her absolutely. It is clear, from the third clause of the will, that she only takes a life-estate. The executors will, therefore, pay her the income of that share, during her life ; and, on her decease, the title to the principal will vest in her "heirs." In speaking of the income of

this share, the testator limits it, on Mrs. Knapp's decease, to her "descendants," and that, too, in a clause of the will where he uses "descendants" as the correlative of "*parent*." I think all these terms have been employed with the idea of denoting succession; and the persons who would take Mrs. Knapp's estate on her decease, by succession, are the parties entitled to the remainder after her life estate, and they should take *per stirpes*, and not *per capita*. The decree will contain a direction for the disposition of this share of the principal, in conformity with this view.