By the Court, E. Darwin Smith, J.
The probate of the will of the testatrix, in this case, was contested before the surrogate upon three grounds:
*72 First. That the testatrix was of unsound mind, and incompetent to manage her affairs, or execute the will.
Second. That the testatrix, at the time of making the will, and also before and since, was under undue influence- and restraint.
Third. That the will was not made and published as required by law.
The last mentioned ground was not pressed, on the argument here, and is clearly untenable. The proof of the due execution and publication of the will, with all the usual legal formalities required by the statute, in such case, is full and explicit.
The great mass of testimony taken before the surrogate and returned upon this appeal, is principally directed to establish the first mentioned ground of objection to the will—“that the testatrix was of unsound mind,” &e.
Considering that in this class of appeals no particular force is to be given to the decision of the surrogate in admitting or refusing to admit a will to probate, and that this court is called upon to examine and consider the evidence in respect to the execution of the will, as an original question, upon the whole facts, I have read this great mass of testimony with much care, and am fully convinced that the decision of the surrogate in respect to the question of the capacity of the testatrix to' .make a will was entirely correct.
Indeed it seems to me impossible, upon a fair consideration of the evidence, to come to any other conclusion, according to the received doctrine of the courts, at the present time, in respect to the degree of mental capacity requisite to make a valid will.
This question has, of late, received so much discussion in this court, and particularly in the Court of Appeals, in the cases of Delafield v. Parish, (25 N. Y. 9;) Van Guysling v. Van Kuren, (35 id. 70;) Tyler v. Gardiner, (Id. 559,) and other cases, that it only remains for the courts to *73 apply the law to particular cases as they arise. The case of Delafield v. Parish came before the Court of Appeals on appeal, as in this case, upon the facts. That court was called upon to pass, as res nova, upon a vast mass of the evidence. The surrogate had rejected two codicils to the will in question, on the ground that Parish had not sufficient mental capacity to make a will; and his decision was affirmed by the general term in the first district. The question for the court was purely one of fact—“ whether Parish possessed sufficient mental capacity to make a will.” Five judges considered that he did not, as matter of fact. And I think those judges, on the question in' respect to the degree of intelligence and mental capacity requisite to make a valid will, substantially concurred in the rule expressed in the opinion of Judge Selden, in these words: “ He (a testator) must have had a sufficient mind to comprehend the nature and effect of the act he was performing; the relation he held to the various objects of his bounty; and to be capable of making a rational selection among them.” (Page 105.) Chancellor Walworth states the rule in<about the same language, in Clarke v. Fisher, (1 Paige, 171;) and Judge Washington, in Harrison v. Rowan, (3 Wash. C. C. 385.) The same rule is asserted, also, in Dunn v. Johayes, (2 Southard, 454;) Boyd v. Ply, (8 Watts, 66;) Converse v. Converse, (21 Verm. 168.)
The judges who decided the case of Delafield v. Parish, held, as matter of fact, that Parish did not possess sufficient mind to make a will, and in this sense was non compos mentis. Judge Selden asserted and concurred in the rule, but dissented from the decision on the facts. Those six judges, I think, were of opinion that the “ sound mind,” required by the statute, to qualify a person to make a will, could not be satisfied with any different rule. But if the sound mind and memory required by the statute is to be deemed equivalent to the compos mentis of the common law, and if the words non compos mentis mean an en *74 tire absence of mind, or an insane mind, then in this case there is not a particle of evidence that would warrant a finding that the testatrix was of unsound mind, in this sense, at the time of making the will, or at any other time in her life. The evidence does show that her powers of mind failed with her body, as is the case with most old persons; hut the whole tenor of the testimony from the witnesses most intimate with her, shows that she retained her memory, intelligence and ordinary powers of mind quite remarkably for so old a person, till her death.
The testatrix was 83 years old when she made the will. She went, of her own accord, to the office of the draftsman of the will, Judge Richardson, where she stayed, as he states, about two hours—informed him that she wanted him to draw her will, and dictated the terms thereof, of which Judge Richardson then made a memorandum, which was produced on the hearing, and from which he drew the will. This memorandum, of itself, shows intelligence, memory, judgment and discrimination in regard to children and grandchildren, and other friends, and the character and situation of her property, quite remarkable' for so old a person ; and, I think, amply demonstrates her capacity to make a will. The will as it is, was drawn, as Judge Richardson testifies, from this memorandum then made by him at her dictation, and was read over to her some few week's afterwards, and corrected or altered in a few particulars by her, and then duly executed. It was in reference to this memorandum, thus made, that one of the chief contestants, and quite an intelligent man, I should presume, from his testimony, said, in the course of his testimony, that “ few men are competent to sit down and apportion an estate as it is apportioned in this will, unless he had notes put down first. I think few men are competent without taking a'memorandum or miuutes of the specifications in the will.”
Judge Richardson testifies that he had but little ac *75 quaintance with the testatrix before; that she appeared remarkably bright, and talked about her husband and children,, and affairs, and the early history of the country.
The two attesting witnesses had known her, one 30 and the other 38 years. They both testify that they saw nothing, at the time of the execution of the will, indicating that she was of unsound mind ; and one of them said that his opinion was, “ that she was more than ordinarily smart for a woman of her age.” And such is the concurrent testimony of most of the witnesses, on both sides.
So far, therefore, as the objection to this will is based upon the ground of the incapacity of the testatrix to make a will, I think the objection utterly unsustained and unfounded.
The next objection to the will—that the testatrix, at the time of making it, was under undue influence and restraint—stands upon a different ground. This objection to a will always implies that the testator or testatrix had sufficient mental capacity to make a valid will, but that the will in question was not his or her own free and voluntary act, but was in fact a will imposed upon him or her by others. The will is set aside, or is refused probate, in this class of cases, on the ground that it is not an honest will—that it does not reflect the unbiased intent and wishes of the testator or testatrix, but "on the contrary, as I said in Voorhees v. Voorhees, (50 Barb. 126,) “had been extorted or procured from the deceased in the weakness and imbecility of old age or disease, by artifice, deceit and imposition, or by persistent importunity amounting to a species of coercion or moral duress.” (And see Eadie v. Slimmon, 26 N. Y. 9; Gardiner v. Gardiner, 34 id. 155; Tyler v. Gardiner, 35 id. 559; Voorhees v. Voorhees, 39 id. 463.) Undue influence, in this sense, is a fraud. The will is set aside upon the principle that its execution was procured by fraud and imposition, and for that reason, *76 and upon that ground, it is not the act, deed or will of the deceased. Upon no other ground has a court any right to set aside a deed or will executed by a person of sane mind and memory, when the execution of the same was not procured, and the free agency of the party overcome, by some constraint, coercion, duress or force.
In this case there is not any distinct affirmative evidence showing that the respondent interfered with the making of the will. He did not draw it, or dictate it; was not present when its tenor was dictated, which we have seen, was done by the testatrix herself; no one else being present at the time, except the draftsman of the will. The respondent was not present at the time of the execution.of the will, and there is no evidence that he knew of its provisions, before its execution or for some time afterwards. So far as relates to acts tending to influence the making of the will, in its present form, or interfering with its provisions or contents, there is not a particle of affirmative testimony tending to impute any interference with the testatrix, to the respondents or either of them, more than any other friend of the testatrix. If the testatrix was unduly influenced by the respondents, or any of them, to make the will in its present form, such influence must therefore be inferred from circumstances, and imputed and found as a fact, without any direct proof, and against the positive testimony of the respondent Johnson and his wife.
The facts chiefly relied on by the appellant, upon this point, are, that most of the property devised by the will was given to the respondent Johnson and his family; that the property was of the amount of about $3.0,000, and was chiefly personal estate. Of this amount the will gives to 'the respondent, inclusive of the specific legacies to his wife and children, about two thirds, according to the estimate of'the collector appointed by the surrogate.
The other facts are, that the testatrix, for the last ten *77 years of her life, lived most of the time with the respondent, Johnson, and he was her agent and managed her affairs, and employed the attorney who drew the will, and took the testatrix to him.
These 'are the leading facts urged to establish undue influence. The respondent Johnson and his wife did go with the testatrix to Waterloo, some ten or fifteen miles from his residence, and took her with them, knowing that she was going there to have Judge Richardson draw her will. Johnson went with her to Judge Richardson’s office. But Judge Richardson and Johnson both testify that he immediately left the office, and was not present during the conversation between her and Judge Richardson in .respect to the will; and both J ohnson and his wife- testify that neither they nor either of them, to the knowledge of each other, had any conversation with her about the will, or its contents, or at Waterloo or that place, or before, at any time. And the circumstances attending the preparation of the will and the directions in respect thereto, as before stated, show, I think, quite conclusively that no person could .have dictated the terms of the will to the testatrix before she went to the office of Judge Richardson, if his testimony is to be believed.
It also appears that though the testatrix had lived much in the family of Johnson, for the last ten years of her life, at the time of the making of the will she was living by herself, and in her own house, at Ovid, several miles dis- " tant from the respondent’s residence; where she had, at that time, lived about two years, and where she continued to live for about a year afterwards.
The fact that the respondent was agent for the testatrix, and had for several years managed her affairs, is, I think, the most important fact for consideration, on this question of undue influence.
Where a large portion of the nroperty of' a deceased per *78 son is given by Ms will to one standing in a fiduciary relation to the testator, the circumstance is suspicious, if it does not furnish a ground for the presumption that undue influence was exerted, or fraud practiced upon the testator in procuring the execution of the will. ( Van Pelt v. Van Pelt, 30 Barb. 140. Lake v. Ranney, 33 id. 68. Tyler v. Gardiner, 35 N. Y. 592.) In such case proof should be given to satisfy the court that such position and relation was not abused, and that the will was the clear and free act of the party, unaffected by any improper influence.
In Crispell v. Dubois, (4 Barb. 393,) the will contained a devise in favor of the medical attendant of the testator, who had long acted as the agent and confidential adviser of the deceased. The court held that these circumstances created a “ strong presumption against the validity of the act;” and that this' should be overcome “by very clear proof that the will was executed by the testatrix with a full understanding of the nature and effect of the instrument.” In that case the will was drawn by the devisee himself; which was also regarded as one of the strong circumstances from which undue influence was to be inferred. In Tyler v. Gardiner the will was drawn from written instructions of the daughter chiefly benefited by it. This fact was justly regarded, in that case, as a very controlling circumstance tending to impeach the will. So when the chief beneficiary under the will stands in a confidential relation to the deceased it should clearly appear that the will was freely made, and was fully understood by the testator. This fact is fully proved, in the present case, by the testimony of Judge Richardson. He drew the will from her dictation, and read it over to her when it was' executed, a few weeks afterwards, when, he says, she fully understood it, and corrected it, in some particulars. ■
The force of the objection that a devisee under a will *79 stood in a fiduciary relation to the deceased, depends very much upon the extent of the intimacy of the personal relations between the parties, and the circumstances attending the execution of the will. In Tyler v. Gardiner, the deceased was on her death bed when the will was executed. Its execution preceded her death but four hours. It w#,s executed in the presence and by the procurement of her daughter,. Mrs. Tyler, and in the concerted absence of other members of the family, and under circumstances of privacy and contrivance which, upon their face, imply the strongest evidence that the will did not reflect the free, unbiassed wishes and intent of the testatrix.
This case is free from most of the usual indicia of fraud and undue influence common to this class of cases. The testatrix was in good health, at the time, and in no immediate apprehension of death. She was living by herself, in her own house, at Ovid, where she had lived for the previous two years, and where she continued to live for a year or more after the execution of the will; and she lived upwards of three years afterwards.
The case is entirely free from any appearance of trick, contrivance or artifice to keep persons away from the testatrix, or to exclude from her presence any of her friends or relatives desiring to see her; and also from all attempts or arts to influence her prejudices, or to excite ill will towards any of her children; or to lead her to make such a will as she did make. The parties benefited by the will did not, so far as I can see, in any way deceive or mislead her, or exert any particular efforts to please her, any further than the exercise of such kindness as was due to her age, sex, and the ordinary instincts of relationship and filial duty.
The influence arising from gratitude, affection or esteem, is not undue.' It must be such as practically to destroy free agency. (Gardiner v. Gardiner, 34 N. Y. 155.)
*80 [Monroe General Term,
June 7, 1869.
I think the order of the surrogate, admitting the will to probate, should be affirmed, and the costs of. the appeal of both parties paid out of the estate.
Order affirmed.
E. D. Smith, Dwight and Johnson, Justices,]