WADE v. HOLBROOK.

NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—DECEMBER, 1876.

## WADE v. HOLBROOK,

### *In the matter of the Probate of the last Will and Testament of* CHARLES CRAFT HOLBROOK, *deceased.*

The rule is well established that the testator must at the time of executing his will, have had sufficient capacity to comprehend the condition of his property, and his relation toward the persons who are, or might be, the objects of his bounties, and the scope and bearing of the provisions of his will.

Mere imbecility or weakness of mind, however, does not incapacitate, if there be sufficient understanding to satisfy the foregoing rule.

Undue influence to avoid a will, must be such as to deprive the testator at the time, of the free exercise of his will; and must be exercised in respect to the very act. And the fact must be proved; it will not be inferred from opportunity and interest.*

Where a testator caused to be prepared a codicil modifying his will in respect to certain trusts therein created, and republishing it as modified, and at the same time caused to be prepared a trust deed, involving the same property and beneficiaries, and there was some evidence that he intended to execute them simultaneously, but because of the absence of a party, failed to execute the deed until sometime after he had executed the codicil;—*Held*, that they were to be considered together, and construed as intended to be harmonious.†

If there be, in such a case, substantial conformity in the provisions of the deed and the testamentary act, the deed is not to be regarded as a revocation of the will.

The testamentary act passes after-acquired property, while the deed does not; and therefore the former should no the deemed necessarily revoked by the latter.

The fact that the deed expressly includes after-acquired property which may come to the hands of a particular agent, does not affect the question of constructive revocation.

The objection that a trust in the will may violate the statute restricting the suspension of the power of alienation, is not ground for refusing probate of the will.

If an ulterior trust is void on this account, it may be dropped, allowing the primary provisions to stand.‡

*Compare *Fagan* v. *Dugan, ante.,* p. 341
†Compare *Mott* v. *Richmyer,* 57 *N. Y.,* 49.
‡Compare *Rose* v. *Rose,* 4 *Abb. Ct. App. Dec.,* 108.

THIS was a proceeding for the probate of the last will and testament of Charles Craft Holbrook, deceased.

The will in question bore date 19th November, 1874, and was then witnessed by William Coit and E. L. Sanderson.

On the 18th day of March, 1875, the will was executed, and witnessed by Messrs. Coit, Sanderson, and Evelina T. Lawrence.   On the 19th day of March, 1875, the testator executed a codicil to the will witnessed by the last named witnesses, Coit, Sanderson and Lawrence.

By his will, in addition to certain small bequests, the testator gave to his wife, Amelia A. W. Holbrook, $20,000 in lieu of dower, and to his son, Charles Albert, $1,000, and released him from any accounts or claims against him for advances, or debts, or otherwise; and the rest and residue of his estate, real and personal, he devised and bequeathed to trustees, upon the following trusts ;—to invest $8,000, and to pay the income semi-annually to Miss Ellen Parker Bigelow, during her life, and on her decease, the same was to fall into his residuary estate, and be added to the fund created for his son, Charles Albert; also to invest the sum of $2,000, and pay the income to Mrs. Elizabeth Rolfe, during her life, the principal at her death to fall into the residuary estate, to be added to the fund created for his son, Charles Albert,—and the remainder to be invested, as another separate trust for the benefit of his son's children, the income to be applied semi-annually to him, during his life, in addition to the sums above invested, for the interest of Miss Bigelow, and Craft Rolfe, and at the death of said Charles, to be equally divided among the children of his said son, and if he should die without issue, the same should be paid to Alice and Addie Wade, in equal shares, at their arrival at 21 years respectively.

It was further directed, that in case either of the trusts to Miss Bigelow, and Miss Rolfe, should fail, by their decease before the testator, the sum thus directed and appropriated should belong to his residuary estate, and if the persons, and their issue above named should die before the testator, then his estate, or the residue should be equally divided among his heirs at law.

The testator appointed the trustees named, his executors. By his codicil, he ratified, reaffirmed, and published his former will in all particulars, excepting as to an alteration made by the codicil. The codicil gave to his wife the testator's household furniture, plate, pictures, books, jewelry, clocks, watches and wardrobe. It revoked the third clause of the will, whereby he had given $1,000 to his son Charles, and directed that if said son Charles should at his decease be indebted to his estate, such debt and securities therefor should be taken as, and form part of, the trust fund created for his benefit, and gave power to his trustees, to enforce the payment of such debts, and apply the securities as his trustees should deem expedient, but the trustees were not to be held obliged to collect such debts, or to realize any part, unless the trustees should deem it for the interest of his said son's wife and children, and the codicil also provided that in case proceedings should be taken by any creditors of his son to reach the income of the trust fund in behalf of his son, in that case his son's interest in the income should cease, and the income should forthwith during his life, be paid by the trustees to his wife, and in case the wife should die before Charles, the principal of the fund and accumulated interest should be paid over to the persons who, according to the will, were to receive it upon the death of Charles; and if it should happen that Charles' present wife should not be living at the time of such proceeding by creditors, then the principal and accumulated

interest should be paid over to such persons as would be entitled in case of his death, according to the will. The testator also authorized the trustee to use so much of the income during the life of Charles as she should deem expedient towards paying premiums to any person for insurance which might have been or might hereafter be effected on Charles' life, payable to his wife in case of his death, and appointed the testator's wife, trustee, under the will, of the several funds, and also executrix of the will in lieu of the executors and trustees named by the will.

The testator executed a deed of trust, so called, bearing date the 26th day of March, 1875, to William Cushing, by which, in consideration of $1, and divers other good and sufficient considerations, &c., he sold, assigned, transferred, and conveyed unto said Cushing, the promissory notes, bonds, choses in action, and personal property then in the hands and possession of said Cushing, held by him as the agent of the testator, a schedule of which was to be annexed to the instrument, as soon as could conveniently be done, and also all his right, title, interest and claim to all other personal property which then was, or might thereafter be held and possessed for the testator, by any other person, or persons, in or to which he had any right, title, or interest to have and to hold to the trusts declared as follows :

*First.*—To collect, manage, and invest such property as he, in the exercise of his best judgment, should deem fit, and pay the income and profits to said testator during his life, and on his decease, to pay from the principal $20,000 to his wife, and $100 to his daughter, Mrs. Wade, and the like sum to each of her sisters, Ella G. and Georgiana May, and to convey, transfer, and set over, unto his said wife, all the rest and remainder of his property, then in said Cushing's hands ; to invest $8,000 for the benefit of Miss Bigelow, and pay to her the

income during her life, and at her death to add that amount to that created for the benefit of his son Charles Albert, and family; to invest $2,000 for the benefit of Miss Rolfe, and pay her the income during her life, and at her decease to add the principal to the sum provided for his son and family; to pay out of the remainder $500 to Miss C. A. Plummer, the like sum to her daughter, Annie M. Plummer, and from the remainder, to create a fund for his son, Charles Albert, to which should be added the principal of the two funds above mentioned, when the principal should fall in, by death of the beneficiaries, and manage the same according to her best judgment; to pay the income and profits to his said son, Charles A. Holbrook, as she might deem fit, and for the best interests of said Charles A. during his life, and upon his decease, to divide the principal into as many shares as he should leave children, surviving him, and pay one share to each, the children of any deceased child to take the parent's share, and in case no child should survive, in such case the fund was to be equally divided between the children then living of Mrs. Wade; but in case the interest should be attached, or proceedings taken against said Charles Albert, by any creditors, then his interest should cease, and the income should during his life be paid by said trustee to his wife, and if she should not be living, then to pay the principal and accumulation of interest to his children in equal proportions, the issue of any deceased child to take the parent's share, and, if his wife should see fit, to expend any sum towards the payment of any premium upon policies of insurance effected upon the life of said Charles.

It was covenanted in this conveyance that said Cushing should not be liable for any loss in regard to the property thus conveyed, unless sustained by his wilful default or neglect, and he covenanted that in

case the testator's wife should not survive her husband, or should decline to hold said residue which should remain after she had received her $20,000, or sign proper covenant binding herself to fulfil the same, in that case, he would hold the said remainder upon the same trusts, and execute the same, but to be only responsible for the exercise of good faith and judgment.

It appeared by the testimony of Mr. Coit, who drew the codicil, that this trust deed which had been drawn in Boston, was submitted to him for consideration and some amendment, about the time that the testator applied to him for the drawing of the codicil, which it would seem was intended to have been executed at the same time, but that the delay in the execution of the trust deed arose from the failure of Mr. Cushing to attend at Brooklyn where the instruments were executed, at the time a meeting for the purpose had been fixed.

Mrs. Fanny Clark Wade, daughter of the deceased by his first wife, filed allegations against the probate of the will; that it was not executed, or attested according to law; that the testator was not competent to make a will at the time; that its execution was procured by fraud, imposition, and undue influence practiced by the legatees, or by some person at their instance, unknown to the contestant, and he was under the influence, duress, and restraint of the legatees, and devisees; that said instrument and codicil were void, as suspending the power of alienation for more than two lives in being, and were void for that reason; that on the 26th day of March, 1875, the deceased executed an instrument whereby he sold, assigned, and transferred unto Mr. Cushing, certain estate and property therein named, being the same estate, and property purporting to have been devised or bequeathed in said will and codicil, by which instrument deceased purports to have been wholly divested of said estate and property; that said

instrument purports to operate as a revocation of such devises and bequests, and that said instruments were not the last will and testament of the deceased.

A large amount of testimony was taken in the case, principally upon the subject of the condition of the estate prior to and about the time when the testator executed the will in question and the codicil, and some testimony which, it was claimed by contestant's counsel, showed undue influence exercised over the testator by his wife and by his son, in hostility to the contestant.

The testator was formerly a resident of Boston, and by his first wife he had several children, to wit: Charles Albert Holbrook, Fanny Clark Wade, Alla Gertrude O'Neill, and Georgiana May Growted; and some 12 years or more ago, the testator procured a divorce from his first wife, with whom his daughter, Mrs. Wade, before her marriage, in April, 1864, resided, and she removed with her mother to the city of Brooklyn, New York, where she resided under an assumed name. The testator remained without any intercourse with his daughter, Mrs. Wade, until after she married in April, 1864, and until after the birth of her first child. He came on soon after to their house, and thereafter, from April, 1865, he visited his daughter whenever he came to New York, which was several times in the year. On testator's return from Europe, in 1873, he was very ill at the hospital in Boston, and Mrs. Wade went on, at the suggestion of her aunt, Mrs. Cushing, to see her father, and remained in attendance upon him for several weeks. Between 1864 and 1873, the testator and his daughter Fanny were in the habit of regular correspondence. During his illness at Boston, he was considerably deranged in his mind, suffered intensely from cancerous difficulty in the lower part of abdomen, and took very powerful medicines and opiates. At times he would jump out of bed, threaten to kill himself, and

jump out of the window.    He told the attendants to hide his razors so that he might not commit suicide, and exhibited great fickleness in respect to his opinion, likes and dislikes of his nurses and physicians.

He however recovered from his illness, discharged his physician, and became thoroughly impressed with the idea that he would become perfectly cured, and appeared to be in improving health, and his mind appeared to be restored to its normal condition, and such seemed to be the effect of the testimony as to his condition, when the will was executed in November, 1874.

Some testimony was given in respect to strange conduct of the testator several years ago, when he was laboring under some trouble about his divorce, but he seemed afterward to have recovered from that.

Prior to the execution of the will, and in June, 1874, on learning that her father was visiting in Brooklyn, at the house of Mrs. Hopkins, who was the mother of his second wife, Mrs. Wade wrote a letter to her brother Charles A. Holbrook, stating that she had learned that her father was visiting Miss Hopkins, and contemplated marrying her, and requested him to use his influence with his physician in Boston, to persuade them that marriage would be detrimental to his health, and asked him (her brother) to keep the matter secret, but use his influence through the physician to dissuade her father from marriage.

The father ascertained the existence of this communication, and it displeased him, and subsequently a copy was furnished to Mrs. Holbrook, his second wife, which created a feeling of alienation between them. Subsequently a will was made by the testator by which he withheld his bounties to Mrs. Wade.    When his will was being prepared, testator stated to Mr. Coit, who drew it, that he did not consider Mrs. Wade was very friendly to him, and the witness testified that there

seemed to be some difficulty between them—that testator told him also, that he had several articles of furniture, books, &c., in Mrs. Wade's possession, for safe keeping—that he had called upon her for them, and she declined to give them up, and that the testator seemed to feel greatly hurt by it, and expressed some indignation, and that Mr. Wade was unwilling to give the articles up unless they (himself and wife) were satisfied that other provisions were to be made in behalf of Mrs. Wade; that witness was under the impression that the demand and refusal had occurred in September, 1874, and that the testator brought witness an account against Mrs. Wade, which he desired prosecuted, but which was not prosecuted, and was afterwards withdrawn.

The testator was married to his second wife, on the 1st October, 1874, and in the spring of 1875, he went South with his wife, for his health, and returned, and passed a portion of the summer in New Jersey, where Mrs. Wade visited him once, and it was claimed by contestant's counsel that she was received with great cordiality by her father, but was rather coolly treated by his wife, who seemed to avoid leaving her husband with Mrs. Wade alone.

Some testimony was also given, tending to show apparent reconciliation, or at least kindly relations between the deceased and Mrs. Wade, while he was sick during the summer of 1875, in New Jersey, and after his return to the city of New York, and while he was in his last illness, but there was no testimony tending to show any undue influence exercised upon the testator, either by his wife, or his son Charles, in respect to the provisions of the will or the exclusion of Mrs. Wade; and the only testimony that tended in that direction was, that his son disclosed the terms and character of Mrs. Wade's letter in respect to his proposed marriage with his second wife, and the alleged fact that Mrs.

Wade's visits to her father seemed not to be agreeable to his wife, after Mrs. Holbrook had ascertained the character of her letter, and her effort to prevent her father's marriage with her.

J. D. TAYLOR, *for proponents.*

ABBOTT BROTHERS, *for contestants.*

THE SURROGATE.—On the question of capacity of the testator, at the time he executed his will, and particularly at the time he executed his codicil, it is impossible to escape the conclusion that he was perfectly sane, and capable in all respects of making his will.

The rule is well established in such cases, that the testator must, at the time of executing the will, have had sufficient capacity to comprehend the condition of his property, and his relation toward the persons who are or might be objects of his bounties, and the scope and bearing of the provisions of his will. (*Delafield* v. *Parish*, 35 *N. Y.*, 9 ; *Van Guysling* v. *Van Kuren*, 35 *Id.*, 70 ; *Tyler* v. *Gardner*, 35 *Id.*, 559 ; *Kinne* v. *Johnson*, 60 *Barb.*, 69.) Mere imbecility or weakness of mind however, does not incapacitate, if there be sufficient understanding to satisfy the foregoing rule.

I think there is no reason to doubt the mental capacity of the testator to make the will in question.

As to alleged undue influence, the rule is well stated in *Gardiner* v. *Gardiner* (34 *N. Y.*, 155), that it must be made to appear that the importunity or influence was such as to deprive the testator, at the time, of the free exercise of his will, and such undue influence must be exercised in respect to the very act, and the act must be proved ; it will not be inferred from opportunity and interest. (*Seguine* v. *Seguine*, 3 *Keyes*, 663 ; *Kinne* v. *Johnson*, 60 *Barb.*, 69 ; *Van Hanswyck* v. *Wiese*, 44 *Id.*, 494.)

In this case, there seems to be nothing that rises to the dignity of proof, showing any such influence in procuring the will in question. All there is that suggests

suspicion, is the fact that he neglected to make provision for his daughters of his first and divorced wife, with whom they consorted, and particularly Mrs. Wade, who it appears offended him in respect to his property in her possession, as he claimed. Notwithstanding, there seems proof of reconciliation between them, before he executed the codicil.

The only question remaining for determination in this matter is the effect upon the will and codicil of the trust deed to Mr. Cushing, executed by the testator, as of March 26th, 1875.

The testimony of Mr. Coit shows that the codicil and the trust deed were both under consideration at the same time; and sufficient evidence is given by him to show that they were probably intended to be executed at the same time. It is therefore not probable that they were intended to be substantially hostile to each other, and it is difficult to conceive that the execution of the codicil, which was a republication of the will, except as modified by it, was designed to be nullified by an instrument intended to be executed at the same time, but which, for sufficient reasons, failed to be executed, until a few days subsequent. Indeed, these facts seem to indicate strongly an intention on the part of the testator and grantor to make them substantially harmonious; and so we are left to determine that question upon the terms of the instrument, and upon the fact of their consideration at the same time, and an apparent intention that they were to be executed at the same time.

By the statute (2 *Rev. Stat.*, 65, section 47), it is provided that a conveyance, settlement deed, or other act of a testator, by which his estate, or interest in property previously devised or bequeathed by him, shall be altered, but not wholly divested, shall not be deemed a revocation of the devise or bequest of such property, but such

devise or bequest shall pass to the devisee or legatee the actual estate, or interest of the testator which would otherwise descend to his heirs, or pass to his next of kin, unless, in the instrument by which such alteration is made, the intention is declared that it shall operate as a revocation of such previous devise or bequest; and by section 48, it is provided, that if the provisions of the instrument by which such alteration is made are inconsistent with the terms or the nature of such previous devise or bequest, such instrument shall operate as a revocation thereof, unless such provisions depend on a condition or contingency, and such condition not be performed or such contingency did not happen.

An examination of the will and codicil, with the provisions contained in the trust deed, shows substantial conformity in their terms and provisions, and if they were intended to be executed at the same time, and drawn for that purpose, it would seem that the trust deed was not intended to be a revocation of the will and codicil.

In *Vreeland* v. *McClelland* (1 *Bradf.*, 417), the learned. Surrogate held that a conveyance of all the property of the decedent, on the same day that he had made his will, did not revoke the will; and says, " it cannot be seriously contended that a will and a deed executed almost, if not quite, simultaneously, as to their general purport in harmony with each other, so that they may fairly be considered as a part of the same transaction, are, notwithstanding, to be construed in such a way that the deed is to nullify the will on the ground that it was an intention to revoke a solemn act just consummated a few minutes before ; the reasonable conclusion would be just the other way, namely, that instead of contemplating a revocation of the will, giving the estate after his death, by a trust deed assuring the same estate to the grantee, on the same contingency, the instruments,

if valid, were both intended together to be a complete and effectual disposition of the decedent's entire property, by a double mode of assurance."

It is undoubtedly true, and well settled by authority, that where a testator has devised specific property, and afterwards sells or disposes of the same property, this amounts to a revocation of such devise or legacy. (*Redfield, Surr. Pr.*, 93 ; *Herrington* v. *Budd*, 5 *Denio*, 321.)

The language of that decision, at page 323 is, "Any alteration of the estate, by the testator, or in his interest, or any modification of it, which converts it into a different estate from the one the testator made at the time of the devise, even though the testator took back the estate in an altered condition by the same instrument, is a revocation of the will or devise." (See *McNaughton* v. *McNaughton*, 34 *N. Y.*, 201, *Barstow* v. *Goodwin* 2 *Bradf.*, 413.)

If the instrument or trust deed in question had not been contemplated at the time when the codicil was executed or intended to be a part of the transaction, under the 47th section of the statute above cited, the testator's interest in his property was not wholly divested by the trust deed, and there is nothing in the instrument declaring his intention to revoke his will or codicil, and it cannot be said, under the 48th section, that the instrument is wholly inconsistent with the terms and nature of his previous devise.

The will and codicil in question took effect at the decease of the testator, and covered in terms all the property owned at the time of his decease, while the deed takes effect from the time of its delivery, and cannot be held to cover any estate subsequently acquired.

It is true that the trust deed in question contains this clause: "Also all my right, title, interest, and claim, either at law or in equity, in or to all other pro-

perty which may now or hereafter be held and possessed for me by any other person or persons whatsoever." The other property conveyed by this provision of the deed is the property alleged to be in the hands and possession of Mr. Cushing, the grantee, and thereinafter held by him as the agent of the grantor.

The testimony shows that a considerable quantity of furniture and household goods was, subsequent to the execution of the trust deed, purchased by the testator, which could not pass by the deed, but is covered by the will and codicil, and whatever may be the ultimate adjudication as to the effect of the trust deed upon the will and codicil, or to the property owned at the time such deed was executed and delivered, it is clear that after acquired property is disposed of by the will, the trust deed should not for that reason be held to revoke the will and codicil, and they should not be admitted to probate.

It is not necessary to determine at this stage of the proceedings the question whether the will and codicil or trust deed contained provisions in violation of the statute against the suspension of the absolute ownership, or the power of alienation of property for more than two lives in being at the death of the testator, for if such be the case it does not constitute an objection to the probate of the will.

If any ulterior trust is bad for the reasons suggested, it may be dropped, allowing the primary provisions to stand and be enforced. (*Harrison* v. *Harrison*, 36 *Id.*, 543; *Burrill* v. *Boardman*, 43 *Id.*, 254.)

Decree admitting the will and codicil to probate accordingly.