## CALLERY v. MILLER.

*(Supreme Court, General Term, First Department.  May, 1888.)*

EQUITY—CANCELLATION OF DEEDS—GROUNDS FOR—UNDUE INFLUENCE.

In an action to set aside a deed on the ground of undue influence it appeared that the grantor was 75 years of age at his death; that the deed was executed about a month prior thereto; that the grantee, his daughter, had lived with and taken care of him for several years until he died; that he was an invalid for the last five years, and required a good deal of care; that when he made the deed his mind was clear and strong, and he told the notary, in the grantee's absence, that he wished to give the property, amounting to about $4,000, to her to recompense her for taking care of him.  It also appeared that he was accustomed to take large doses of brandy and laudanum, administered by the grantee; that he had frequently declared his purpose to leave his property to all his children; that he denied ever making such a deed, and declared that if grantee had such an instrument it was a fraud.  *Held*, that the facts did not establish undue influence.[1]

Appeal from circuit court, Rensselaer county.

Action brought by Electa Callery against Sarah B. Miller to set aside a deed given by Henry Ingram to defendant.  Judgment was entered in favor of the plaintiff, by direction of the court, after trial of the issues by the jury, and the defendant appealed.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

*E. L. Fursman*, for appellant.  *R. A. Parmenter*, for respondent.

LANDON, J.  The judgment from which this appeal is taken is to the effect that the deed given by Henry Ingram to the defendant, his daughter, on or about the 11th day of July, 1881, was executed and delivered by him under undue influence on the part of the defendant.  The main question presented is whether the evidence supports and justifies the judgment.  Our conclusion is that it does not.  Henry Ingram, at the time of the execution of the deed, was 75 years of age.  He died on the 17th of August, 1881.  He was a farmer.  He had four children living, all of mature age, and four grandchildren, children of a deceased daughter.  The defendant and her husband lived with him for 20 years upon the farm which the deed in question purports to convey.  This farm is worth about $5,000, and was incumbered by a mortgage of $1,500.  Aside from this farm and his personal property upon it, worth about $500, he had but little property.  He died of a cancer upon his breast.  For five or six years prior to his death he had been in feeble and constantly failing health.  The cancer developed in April preceding his death, and after that time he was confined to his house.  His disease became offensive, and he required a great deal of attention.  This was principally given him by the defendant.  None of his other children or of his grandchildren lived with him.  His wife had long been dead.  There is no affirmative evidence of any direct acts of influence or importunity on the part of the defendant.  The principal facts relied upon by the plaintiff, in support of her cause of action, are that his mental faculties became so much impaired as to make him easily susceptible to undue influence; that he was accustomed to take large doses of brandy and laudanum, and these were administered to him by the defendant; that the effect of the deed, and of a bill of sale which he gave to defendant of his personal property, makes her the sole object of his bounty, to the exclusion of his other children and grandchildren, with whom his relations were pleasant; that he had frequently declared his purpose to be to leave his property to his children in equal shares; that he denied, both before and after the deed was executed, that he had disposed of his property by deed or bill of sale, and declared that if the defendant had any such paper it was a fraud.

---

[1] As to when equity will grant relief on the ground of fraud and undue influence, see June v. Willis, 30 Fed. Rep. 11, and note; McDaniel v. McCoy, (Mich.) 36 N. W. Rep. 84; King v. Cummins, (Vt.) 11 Atl. Rep. 727; Fishburne v. Ferguson's Heirs, (Va.) 4 S. E. Rep. 575; Fisher v. Bishop, (N. Y.) 15 N. E. Rep. 331.

These facts are proper to be considered, but if there is no proof of undue solicitation, they do not supply it.  The testimony of Akin, the draughtsman of the deed, and the officer before whom it was acknowledged, shows that in the immediate act Ingram acted for himself, gave the instructions, assigned reasons, and deprecated his inability to gave his daughter more for her kindness and care.  He engaged in a general conversation with Mr. Akin, which disclosed a mind free from any sense of oppression, but conversant with and interested in the public affairs of the day, and in his own success as a farmer, and of the success of the business of farming in general.  He was lying in bed at the time.  The defendant was within call in an adjoining room.  We may suspect that she had previously arranged this interview, and the part her father should take in it, but suspicion is not proof.  The testimony of Akin comes closer to the very act in question than the testimony of any other witness.  It shows a man feeble in body, but strong in mind, making a disposition of property according to a purpose which he had previously settled in his mind, and for which he had very good reasons, which he was ready and willing to assign.  There is nothing in the evidence to prove that Ingram did not of his own free will give his property to his daughter.  When he was in health, or before he was confined to his bed, he may well have thought and said that he would divide his property among his children equally.  But after he became unable to take care of himself, without the assistance of his daughter, he naturally enough may have looked at the matter in a different light; and thus, when he said to the draughtsman of the deed, "She has taken care of me.  She has dressed my carbuncle [cancer] from six to ten times a day, night and day.  I want to give her a deed of this farm.  I am not worth money enough to pay her,"—he may have spoken just as he felt.  If he did, we see no reason to set the deed aside.  There is much reason to suppose that he was speaking naturally, sincerely, and freely.  His subsequent denial that he had given any deed or bill of sale may have been his method of avoiding the difficulties which he did not care to encounter, by making an avowal of the fact.  There is not much reason to attribute it to forgetfulness.

We are asked to infer the undue influence of the defendant, and to import that element into the case.  We should not infer an improper influence when the act itself may just as naturally have been induced by motives of affection, gratitude, or justice, or all of these.  *Gardiner* v. *Gardiner*, 34 N. Y. 155; *Seguine* v. *Seguine*, 3 Keyes, 669.  We must not infer undue influence from opportunity and interest, but must look for the acts which tend to show its actual exercise with respect to the subject complained of.  *Cudney* v. *Cudney*, 68 N. Y. 148; *Hazard* v. *Hefford*, 2 Hun, 445; *Kinne* v. *Johnson*, 60 Barb. 69, 79; *Wade* v. *Holbrook*, 2 Redf. Sur. 378, 387.  From the mere difficulty of obtaining positive evidence we are not at liberty to infer its concealed or secret existence.  Such a rule would substitute suspicion for evidence.

We think the judgment should be reversed, and a new trial granted,  The case is an equitable one, and the reversal upon questions of fact.  My brethren advise that the defendant be required to pay the costs of the trial below and of the appeal.

LEARNED, P. J., and INGALLS, J., concur.