CUSHNEY and wife *vs.* HENRY and others.

Where the testatrix devised her real estate to trustees, in trust to divide the rents and profits equally among her three children, or their issue, during the life of the children and of the survivor of them, with cross-remainders in case of the death of either without issue during that time ; and upon the death of the survivor, to sell the estate and divide the proceeds thereof among the issue of such children, thus : if all left issue, then one third to the issue of each ; if two left issue, one half to the issue of each ; and if only one left issue, then such issue to take the whole ; the issue of each to take as tenants in common ; and if any grandchild of the testatrix died in the lifetime of its parent, leaving issue, and which issue should be living at the death of the surviving child of the testatrix, then such issue to take such share as the parent of such issue would have been entitled to if living ; and the two sons of a daughter of the testatrix died in the lifetime of their mother, the one leaving two children and the other four ; *Held*, that these grand children of the daughter took *per stirpes*, as the representatives of their deceased parents respectively, and not *per capita*.

The rule in *Shelly's case* only applies to a limitation of a remainder to the *heirs* or the *heirs of the body* of the first taker ; and a limitation of a remainder to the *issue* of the first taker, to take effect at his death, is valid, and the issue take the remainder as purchasers.

Courts of equity, in regard to trust estates, adopt the same rules of law which are applicable to legal estates ; and in a partition suit, where all the cestui que trusts are before the court, if the legal estate has devolved on the court of chancery by the death of the surviving trustee, the court will appoint the master who sells the property a trustee, so as to carry the legal estate to the purchaser at the sale.

In all cases of mere passive trusts, the revised statutes have vested the legal estate in the lands in the person or persons entitled to the actual possession, and to the whole beneficial interest in the lands under the trust.

THIS was a bill for the partition or sale of a lot of land in January 28. the city of New-York, which belonged to Mary Brevoort, before and at her death, in April, 1794. The parties to this suit are the representatives of two of the children of Mrs. Brevoort ; a third child, who was living at the death of his mother, having since died without issue. Mrs. Brevoort, by her will, made in 1791, devised all her real estate to three trustees, and to the survivor of them and to the heirs of such survivor, in trust to sell or rent the same, as they should think proper, during the life of her children, and of the survivor of

1834.

Cushney
v.
Henry.

them ; the income or rents to be divided equally among her three children, Abraham Brevoort, Nicholas Brevoort, and Hester, the wife of Joseph Henry, during their natural lives. The testator further directed, that upon the death of either of her children, leaving issue, the part of the income or rent belonging to such child should be paid to such issue. And if either died without issue, his or her share should go to the survivors, or to the survivor and the child or children of such as had died leaving issue ; the issue always to stand in the place of, and take such share as his, her or their parent would have been entitled to if living. And upon the further trust, upon the death of the survivor of the children of the testatrix, that the trustees should sell the estate, if it had not before been sold, and pay the money arising from such sale to the issue of such of the children of the testatrix as had left issue then living, as follows : If all her said children should have left such issue, then one equal one third part was to be paid to the issue of each ; if only two of them, one half to the issue of each ; and if only one should have left issue, then such issue to take the whole. The issue of each always to take as tenants in common ; and if any child of the sons or daughter of the testatrix should die in the lifetime of its parent, leaving issue, which issue should be living at the death of the survivor of the children of the testatrix, then such issue to stand in the place of and take such part of the estate as his, her or their parent would have been entitled to if living. At the time of the making of the will, and at the death of the testatrix, Mrs. Henry, the daughter, had two sons, Henry Brevoort Henry and George W. Henry, both of whom died in the lifetime of their mother, leaving issue. George W. died first, leaving two children, George W. Henry and Hester Henry, two of the defendants in this cause, who are infants, him surviving. Henry Brevoort Henry died about a year afterwards, leaving four children, Mary the wife of R. H. Cushney, James L. Henry, George Henry and Joseph Henry, all of whom are parties to this suit. Hester Henry, the daughter of the testatrix, died in 1831. Nicholas, one of the sons, died in 1798, without issue. And Abraham, the other son, died in 1794, a few

months after the death of his mother, leaving two children, Henry Brevoort and Ann Brevoort. Henry Brevoort conveyed his interest in the premises to his mother, Ann, the wife of J. Odell, in 1819. His sister Ann Brevoort married W. Bolmer, and died in 1822, leaving six children, all of whom were parties to this suit.

*D. Cady*, for the complainants and the other children of Henry B. Henry. It is insisted that the true construction of the will of Mary Brevoort will warrant the claim made by the four children of Henry B. Henry, that the six grand children of Hester Henry take equally. But if the words of the will can have such construction as would give to the two children of G. W. Henry one fourth of the estate, can such be its legal effect ? Suppose the testatrix had devised the estate to her children in the same manner she did the interest, rents, issues and profits, would not each of them, had it not been for the statute abolishing entails, have taken an estate tail by implication, with cross-remainders to the survivors in case either of them should die without issue ; and if so, each of them would have taken a fee by force of that statute. (6 *Cruise's Dig.* tit. 38, *Devise,* ch. 12, § 30 *to* 35. *Rosevelt* v. *Thurman,* 1 *John. Ch. Rep.* 220. 5 *T. R.* 337. *Den* v. *Slater,* 16 *John. Rep.* 397 *to* 415.) Rents might be entailed as well as land ; and so of trust estates. Although in this case the testatrix intended that her estate should be converted into money and the fund divided, yet the same rules are to be applied in the distribution of the fund as would be applicable in a division of the land itself. (7 *Cruise's Dig.* 33, *tit.* 32, *Estate Tail,* ch. 1, § 20, 21.) The fund, though money, will be considered as land ; and the will in this case is to have the same construction as would have been given to it had the testatrix devised the land to her children, instead of the interest, rents, issues and profits. (1 *Cruise's Dig.* 475, *tit.* 12, *Trust,* ch. 1, § 38.) But if the devise to her children is to be regarded as a bequest of personal estate, then whatever words would give a clear estate tail in land, will give the absolute property in personal estate. (6 *Cruise's Dig.* 493, *tit.* 38, *Devise,* ch. 19, § 28. *Jacob* v. *Amyatt,* 4 *Brown's Ch. Cas.* 543.) So that the devise

to the children of the testatrix, whether it be regarded as of re-al or personal estate, gave to them an absolute estate. And as Hester Henry died intestate, the rights and interests of her six grand children are to be ascertained by the statute regulating descents, or by the statute for the distribution of the estates of intestates ; and by either of those statutes, they take equal shares of her estate. (1 *R. S.* 751, § 2. 2 *Id.* 97, § 75.) It may be said that the case of *Lyon* v. *Burtiss*, (20 *John. Rep.* 483,) is an authority for saying that the devise over, on the event that either of the children of the testatrix should die without issue, is good by way of executory devise. Be it so. The same case, at page 489, shows, that whenever the first limitation vests in possession, those that follow vest in interest at the same time, and cease to be executory, and become mere vested remainders, subject to all the incidents of remainders ; and that after the death of Abraham, leaving issue, and the death of Nicholas without issue, Hester Henry, the survivor, became seised in fee tail by necessary implication ; or that she would have been so seised, had it not been for the statute abolishing entails, and by force of which she became seised in fee.

Another view may be taken of this case, which will lead to the same result. The estate was devised to three trustees and the survivors and survivor of them, and the power to sell was given to them, the survivors and survivor, and to the heirs, executors and administrators of the survivor. Isaac Stoutenburgh, junior, one of the trustees and executors named in the will, refused to accept the trust, and died in 1799. William Laight qualified as executor, and received the rents and profits of the real estate until 1802, and then died, leaving Thomas Pearsall, the other trustee, him surviving. T. Pearsall refused to accept the trust, and died in 1807 ; and it is not known that he has any heir, executor or administrator. Immediately after the death of William Laight, Hester Henry and the heirs of Abraham Brevoort, as absolute owners, took possession of the lot ; and from that time until her death, in 1831, they had possession by their tenants. Thus Hester Henry had, as owner, the possession for twenty-nine years before her death ; and if she did not die seised in fee, in whom was the fee ? The

trustees were all dead, and there was no person who, as heir, executor or administrator of the surviving trustee, claimed to be or would consent to act as trustee. Hester Henry and the heirs of Abraham Brevoort were the only persons who had any beneficial interest in the premises. They were in the actual possession by their tenants, and in the actual receipt of the rents and profits at the time the revised statutes went into effect; and if they then had but an equitable estate, it was by force of those statutes converted into a legal estate. (1 *R. S.* 727, § 47.) What legal estate was it?—an estate of inheritance, or an estate for life? If the heirs of Abraham Brevoort had not an estate in fee, and power to convey and devise it to whom they pleased, the conveyance from Henry Brevoort to his mother, Mrs. Odell, must be void; and unless Ann, the other heir of Abraham Brevoort and the wife of William Bolmer, was seised in fee, either in law or in equity, he cannot be entitled as tenant by the curtesy. And if the heirs of Abraham Brevoort were seised in fee after the death of Nicholas without issue, how can it be said that Hester Henry was not so seised? And if she was so seised, her grand children must share equally in her estate.

The case of *Barns* v. *Ballard*, (3 *Atk. Rep.* 71,) shows that where money is devised to four with a right of survivorship, what one of the four takes as survivor, will not, on his death, survive again. In the case before the court, Hester Henry took one sixth, either as one of the heirs of Nicholas or as survivor. If she took that sixth as one of his heirs, she must have taken it in fee; and if she took it as survivor, it would not again survive, and she consequently must have taken an absolute interest therein. As to that sixth of the whole or one third of Hester Henry's moiety, it seems, there can be no ground on which the two children of George W. Henry claim half of that third, whatsoever may be thought of their claim as to the other two thirds.

*J. King,* for the infant children of George W. Henry, the elder. The infant defendants, George W. Henry and Hester Henry, claim the one quarter part of the premises sought to be partitioned, or the proceeds thereof, under the will of

Mary Brevoort. It is argued, on behalf of the complainants, that the clause of the will in relation to the dying of the grand children of the testatrix in the lifetime of their parent was intended to provide for the case, if one, not if both of the children of Hester Henry died in her lifetime, leaving issue. That this criticism cannot be sustained is evident from the consideration that the proportion of interest in her estate, intended for her grand children, is given in the will as a general rule of instruction to her trustees, and was expressly intended to prevent the operation of the statute regulating descents. Whether that provision is legal, or otherwise, is another question. The fee of the premises in question, on the death of Mary Brevoort, in February or March, 1794, vested in the trustees. The will is not impeached. The terms of the devise to the trustees are without ambiguity. (*Judson* v. *Gibbons*, 5 *Wendell*, 224.) The devise of the whole estate is directly to the trustees ; not a mere power to sell, &c. but an absolute transfer of the whole title to the premises in question. (1 *Cruise*, 539. *Shaw* v. *Wright*, 1 *Ab. Eq.* 176, § 8.) This case required a fee simple to become vested in the trustees, to enable them to execute their trusts ; an estate in fee simple did therefore pass to them. Taking out letters testamentary was not necessary to perfect the title in the trustees. They were devisees without proving the will. (5 *Wendell*, 227.) But two of the trustees did not act. They should, then, have been required to release. (1 *Cruise*, 557.) But if this view is not accurate, then we say, although there was no release, the trust estate vested by common law in the trustee who did accept. (*In the matter of Stevenson*, 3 *Paige*, 420. *Hawkins* v. *Luscomb*, 2 *Swanston*, 466, *and notes*.) By the case of *Judson* v. *Gibbons*, (5 *Wendell*, 224,) it appears that Pearsall, after the death of Laight, could have assumed the management of the trust estate ; that he would have been a necessary party to a suit, without having released his trust. He therefore was the survivor of the trustees. We say it became vested in the heir or heirs at law of the survivor by the terms of the devise, and that the court of chancery could, at any time, have been called upon to appoint a new acting trustee. And the case of

*Judson* v. *Gibbons,* and the other authorities referred to, will show that the legal estate is now in the heir at law of Pearsall. (1 *Cruise,* 557, § 52, 53.) And the question may arise whether a good title can be given without making such heir at law a party to this suit. It has been determined that the change of a trustee does not create a revocation of a prior devise. (6 *Cruise,* 122, § 81. *Williams* v. *Owens,* 2 *Vesey, jun.* 595.) Wherever there is a devise in trust to pay over the profits, or to convey or to sell, the legal estate must, in all these cases, necessarily vest in the trustees. (*Roberts* v. *Dixwell,* 1 *Atk.* 607. *Symson* v. *Turner,* 1 *Eq. Ab.* 383. *Sylvester* v. *Wilson,* 2 *T. R.* 444. *Bagshaw* v. *Spencer,* 2 *Atk.* 578. 3 *Brown's Ch. Rep.* 347. *Henry* v. *Purcell, Fearne,* 75. *Horton* v. *Horton,* 7 *T. R.* 652.) As to the question whether the devise in the will would have been good by way of executory devise, if it had been made directly to her children with the same limitations, or void under the laws of our state, I remark that the devise was to the trustees, to hold the real estate during the lifetime of her children ; and after the death of the survivor of them, then to be sold and distributed as directed. This devise, if it had been made directly to her children, would have been good by way of executory devise, the event on which the limitation over was to take effect being certain. The contingency must happen within a period embracing a life or lives and twenty-one years afterwards ; and the number of contingencies is not material, if they are to happen within the limits allowed by law. (4 *Johns. Ch. Rep.* 388. 5 *Id.* 21. *Gillespie* v. *Miller,* 16 *John. Rep.* 332. 20 *Id.* 483. 2 *Bl. Com.* 175. 3 *Peters,* 115, 117. *Fearne,* 320, 371. 3 *P. Wms.* 262.) If there is now no trustee, then the jurisdiction devolved upon this court, upon the general maxim that a trust shall not be permitted to fail for the want of a trustee.

But it is said that as Hester Henry was the fermor of the rents and profits at the time the revised statutes went into operation, her equitable estate in the premises in question was by the force of the statute converted into a legal estate. (1 *R. S.* 727, § 47.) But the very next section of the statute (48th) expressly excepts the present case.

*F. B. Cutting*, for W. Bolmer and the children of Ann Bol‑
mer, deceased.

THE CHANCELLOR.   The principal, if not the only ques‑
tion in this cause, is, whether the six grand children of Hester
Henry, upon her death, became entitled to equal proportions
of the one moiety of the premises in question; or whether the
two children of G. W. Henry the elder are entitled to one
quarter of the premises, and the four  children of Henry Bre‑
voort Henry, to the other quarter.   This depends upon the
construction of the will of Mary Brevoort, their great grand‑
mother; for if they are to take as heirs at law of Mrs. Henry,
their grandmother, all the grand children, although by differ‑
ent parents, take equally, under the provisions of the revised
statutes.   (1 *R. S.* 751, § 2.)   It is wholly immaterial in
this case, so far at least as respects the beneficial interest of
the parties in the premises in question, whether the legal es‑
tate was vested in the children of the testatrix and their is‑
sue, as her heirs at law, or in the trustees and the heirs of the
survivor of them, in trust for the children of the testatrix and
their issue.   As a general rule, courts of equity, in regard to
trust estates, adopt the rules of law which are applicable to
legal estates.   (1 *Saund. on Uses*, 269.   *Garth* v. *Baldwin*,
2 *Ves. sen.* 646, 655.)   And I see nothing in this case to take
it out of that general rule.   The forty-seventh section of the
title of the revised statutes relative to uses and trusts, vests
the legal title, in cases of mere passive trusts, in the person or
persons entitled to the actual possession and whole beneficial
interest in the trust estate.   (1 *R. S.* 727.)   But if this was
a case coming within the provision of that section, the only
effect of that provision would have been, to have vested the
legal estate in one half of the premises in Mrs. Henry, for life,
with remainder to her issue who might be living at the time
of her death, in such proportions as is provided for by the
will of her mother, Mrs. Brevoort.   This, however, was an
active trust, coming within the forty-eighth section of the
statute; as the trustees are authorized to sell the estate, and
divide the proceeds after the death of all the children of the
testatrix.   In order to give the purchaser a good title, under

the decree in partition, it may therefore be necessary for the court to appoint the master who sells the property, or some other suitable person, a trustee to join in the conveyance, if the trust has devolved on the court, by the death of the surviving trustee, without heirs, or the only trustee in whom the legal estate ever vested. To prevent any question as to the vesting of the legal estate in the purchaser, the decree in this case may therefore direct that any person or persons to whom the legal estate descended in trust, upon the death of the original trustees or any of them, be removed from such trust; and that a master, to be designated in the order of sale, be substituted or appointed the trustee of the legal estate; so that he may join in the conveyance as such trustee, as well as in his official character as master.

Upon the death of Nicholas Brevoort without issue, in 1798, one half of the beneficial interest in this lot became vested in Mrs. Henry, for life, as the last surviving child of the testator, with remainder to such of her issue as might be living at the time of her death. The other half was vested in the two children of Abraham Brevoort, for life, or as a conditional fee subject to the contingency of their dying before the termination of the life estate of Mrs. Henry. As Henry Brevoort survived his aunt, his one fourth of the beneficial interest in the lot is now vested in his mother, in fee, under the conveyance from him. And the share of his sister, who died in the lifetime of Mrs. Henry, is now vested in the children of Mrs. Bolmer, under the will. The estate limited to Mrs. Henry, was not an estate tail; and therefore it was not turned into a fee simple by the operation of the statute abolishing entails. The rule in *Shelly's case* only applies to a limitation of a remainder to the heirs, or to the heirs of the body, of the first taker. It does not apply to this case, where an estate for life only was given to Mrs. Henry, with remainder to her *issue* who might be living at the time of her death. The term issue, in such a devise, is a word of purchase, and not a word of limitation. (*See Finch's Ch. Rep.* 280, *and Coke's Rep. by Thomas & Fraser,* 263, *note* 15.)

To ascertain whether the testatrix intended that the grand children of Mrs. Henry should take *per stirpes,* as the represen-

1834.

Cushney
v.
Henry.

tatives of their deceased parents, and not *per capita*, it will be necessary to examine that part of the will which provides for the distribution of the estate after the death of the last surviving child of the testatrix. She first directs the estate to be distributed among the issue of such of her children as shall have died leaving issue, and that the issue of each shall take as tenants in common. Then comes the provision under which the guardian ad litem of the two infant children of George W. Henry supposes they are entitled to a fourth part of the estate, which would have belonged to their father if he had survived their grand mother. That clause of the will is in these words : "And if any child of my said daughter should die in her lifetime, and leave issue, or if any child of either of my said sons should die in the father's lifetime and leave issue, and such issue shall be living at the time of the death of the survivor of my said children, then such issue shall stand in the place of, and take such part of my estate as his, her or their parent would have been entitled to if living." The counsel for the complainants, and for the other children of Henry Brevoort Henry, supposes this clause of the will was only intended to provide for the case of the death of a part of the children of Mrs. Henry, or of her brothers, leaving issue ; but that it was not intended to apply to a case where all died in the lifetime of their father, or mother, so that all the issue of such parent would stand in the same degree of consanguinity to the grand parent. I see nothing, however, in the will to induce a belief that such was the intention of the testatrix ; especially, as she had, as to the rents and profits of the estate, already made a provision for the distribution of an equal share to the surviving child and to the issue of such as had died, *per stirpes*. I have no doubt, therefore, that she intended that the children of each of her grand children who might happen to die before the time fixed for the final distribution of her estate, should take the shares which would have belonged to their parents if they had been living at that time.

The death of all the trustees under this will, and without heirs, could not affect the equitable rights of the present parties. In that case, the legal estate, which was limited to the heirs of the survivor, who refused to accept the trust, would

probably revert to the heirs at law of the testatrix; but they
would take it charged with the trusts in the will, in favor of
the issue of Mrs. Henry, after her death. It appears, from the
testimony in this case, that both of the sons of Mrs. Henry
were in esse at the date of the will. The limitation over to
their children, in case of the death of those sons in the lifetime
of their mother, is not liable, therefore, to the objection that it
is a remainder to the children, or issue, of a person not in exis-
tence at the death of the testatrix.

The two children of George W. Henry the elder, are enti-
tled to the beneficial interest in one fourth of the lot in ques-
tion ; and the decree must declare the rights of the several
parties accordingly. And the usual directions for a reference
to inquire as to the necessity of a sale, and as to specific and
general liens, must be given in the decree.