No. 1426.—ALFRED PENN, Appellee, *v.* KEARNY, BLOIS & Co., Appellants.

Where a party has leased, for a given time, certain described premises, including several houses and lots of ground in the city of New Orleans, and a fire breaks out which destroys the buildings on a portion of the leased premises, the lessee has the option under art. 2667 of the C. C., to demand a revocation of the entire lease or a diminution *pro tanto* of the rate. He cannot retain the portion of the leased property unaffected by the fire and have the lease revoked as to that which was destroyed.

Where the evidence shows that a commercial firm have enjoyed the benefits of a lease that has been made to and in the name of one of the members of the firm, they will be held liable in *solido* for the rent of the property leased.

Evidence to show that the firm name was marked on goods deposited in the warehouse is admissible in a suit by the lessor to recover the rent.

A PPEAL from the Second District Court of New Orleans, *Thomas*, J. *Wm. H. Hunt*, for appellee. *George L. Bright*, for appellants.

HOWE, J. This suit is brought to recover $6,184 98 for rent of a warehouse and adjacent lots, let by plaintiff to Alfred Kearny, the obligations of which hiring, it is alleged, were assumed by the defendants as a commercial firm. The rent is claimed from July 1, 1861, to November 1, 1862. The defendants gave their notes, in their firm name, for a portion of the rent up to November 1, 1861, and four of these rent notes, amounting, with costs of protest, to $1,489 98, form part of the sum sued for. The balance, $4,700, is for rent from November 1, 1861, to November 1, 1862.

The defendants, admitting the execution of the leases and rent notes sued on, acknowledged an indebtedness of $615 94 for rent to August 24, 1861, and deposited that sum in court. They further averred " that on the twenty-fourth of August, 1861, the buildings and improvements belonging to plaintiff, upon the property leased, were destroyed by fire, and the lease became canceled and annulled by the effect of law, and the revocation of said lease demanded by the lessor."

The case was tried before a jury, who rendered a verdict for the sum claimed, less the amount paid into court, and the sum of $700 as diminution of the rent; and from a judgment on this verdict, the defendants, after applying without success for a new trial, have appealed.

It appears that on the ninth of July, 1853, plaintiff leased to Alfred Kearny two of the lots and the warehouse, for $150 per month, from November 1, 1858, to November 1, 1859; that on the fifteenth of February, 1859, he leased to the same a large lot lying next below the warehouse, and also another lot on Julia street, to first of November, 1859, at $130 per month; that on the twenty-fourth of February, 1859, the plaintiff and Mr. Kearny executed a written instrument, in which, after reciting the foregoing leases, they express themselves as follows :

"Now, then, Alfred Penn and Alfred Kearny have this day entered into a contract of lease for the whole of the aforesaid property, measuring in the aggregate about two hundred and fifty-seven feet front

on Magazine street, and about eighty-nine feet fronting on Julia street, running back to the lots fronting on Magazine street, and forming a key to the same, viz: Alfred Penn releases to Alfred Kearny all of the said property for the term of three years from the first day of November next, 1859, to the first of November, 1862, the same being renewed with all the conditions and privileges recited in every particular in the two aforementioned leases, with the exception of the price, which is hereby consolidated, and agreed upon at the rate of forty-five hundred dollars per annum to commence from the first day of November next and payable monthly, say $375 per month, said lessee agreeing to grant his rent notes each year in advance for the same, say twelve notes of $375 each."

In consideration of certain improvements made by plaintiff, the rent was further increased to $4,700 per annum.

On the twenty-fourth of August, 1861, a fire occurred on the lot lying next below the warehouse, on Magazine street, and a shed, fifty-four feet long and forty-seven feet wide, in the rear corner of that lot was destroyed. The defendant, Kearny, ten days after, sent the following letter to plaintiff: ·

" Mr. Alfred Penn:

" *Dear Sir*—A portion of the buildings upon the premises situated on Magazine and Julia streets, which I rented from you, having been destroyed by fire, I now notify you that I demand a revocation of the lease, and am no longer the lessee of the premises. The merchandise now on the premises will be removed therefrom as soon as possible, not, however, before paying the rent due, which we are ready to pay on demand.

" ALFRED KEARNY.

" New Orleans, September 3, 1861."

. The letter was sent at a time when plaintiff was absent from the city, and it appears that about November 7, 1861, he notified defendant, Kearny, that he did not recognize the right of revocation, and offered to rebuild the shed. The shed was, in fact, rebuilt about February 25, 1862; and it was for the seven months elapsing from the time of the fire to the time of the completion of the new shed that the jury allowed the diminution at the rate of one hundred dollars per month—a sum apparently about equal to the proportion of rent for the whole lot on which the shed stood.

The shed which was burned covered an area of about two thousand five hundred square feet; the lot on which it stood contained about twenty-one thousand square feet; the whole property leased, including warehouse and adjoining lots, contained upward of fifty thousand square feet. The defendants continued to occupy the warehouse, the upper Magazine street lot, and the Julia street lots; at least there is neither allegation nor evidence that they abandoned them. As for the lot on which the burned shed had stood, the letter of Kearny of September 3, 1861, shows that they were still in occupation ten days after the fire,

and, though mention is made of an intention to remove, there is no satis-
factory evidence to show that they ever did really remove, and the bur-
den of proof was certainly on them.    There is evidence furnished by
plaintiff, to show that they occupied the lot on which the shed was,
burned until some time after the shed was rebuilt.

But even if we admit the positions of defendants that the agreement
of February 24, 1858, was the only contract in force at the time of the
fire; that the destruction of the shed gave to' defendants, under article
2667, C. C., the option to cancel the lease or to demand a diminution of
rent, and that the defendants did remove from that portion of the
premises on which the fire occurred, it is still difficult to perceive how
the claim of cancellation of the whole lease and discharge from the ob-
ligations to pay any rent after the fire, can be allowed.    If the defend-
ants had surrendered to plaintiff the whole premises, our conclusions
might have been different, though even in such case it must be remem-
bered that our laws do not favor the abrogation of leases where the
lessor is not in fault.    6 A. 279; 12 A. 823; 17 A. 322.    But when we
find them remaining in possession of the principal portion of the object
of lease, we must conclude that the diminution of rent allowed by the
jury was an ample satisfaction of any right the defendants had under
the circumstances.

In this connection we have been referred by defendants to a passage
from Marcadé, volume 6, p. 448.    The author is commenting upon
article. 1722 of the Code Napoleon, the equivalent as to this case, of
article 2667 of our Civil Code, and says:

"La destruction partielle donne au locataire le choix de le reselier,
ou de le continuer sur se qui reste avec diminution du prix; le simple en-
dommagement ne permet la resiliation ne a l'une ni a l'autre des parties,
et oblige seulement le bailleur a reparer le degat pour remettie la chose
en bon etat."

The doctrine quoted seems to be in favor of plaintiff rather than de-
fendants, admitting that the destruction of the shed was such a " des-
truction partielle" as to give the lessee the choice of canceling the
lease or of continuing to occupy the remainder of the buildings, " ce qui
reste," at a reduced rate    It is evident he cannot do both.    If he cancel
the lease he must give up the whole property.- If he " continue to oc-
cupy what remains with diminution of rent," he cannot cancel the lease.
A right of choice between two methods is not a right to adopt both.

It is contended by the counsel for defendants that there is error in the
judgment because it is rendered against them in solido; that the lease is
signed by Alfred Kearny; that there is no evidence to make the firm of
Kearny, Blois & Co. responsible; and that if there be any, there is none
to show that the firm is a commercial firm so as to bind the members in
solido.

In Reynolds v. Swain, 13 La. 197, it was held by this court that where
one of the defendants, sued as commercial partners, hired the premises
in his individual name, but that the store was occupied until abandon-
ment by the partnership, the latter circumstance showed that the con-
tract was made for the affairs of the partnership, and the firm was there-

fore bound by the act of the partner, lessee, though made in his individual name. The case at bar is, perhaps, a stronger one in favor of plaintiff, since the firm of Kearny, Blois & Co., furnished rent notes under the lease of February 24, 1859, the one specially pleaded in the answer, occupied the premises as we have seen, admitted in their answer the execution of the rent notes, made tender of the rent up to the time of the fire, and finally prayed that the lease might be annulled and canceled, and that the notes described in plaintiff's petition be surrendered to the respondents."

And we think it abundantly shown that the defendants' firm was a commercial partnership. The allegation that it was is not specially denied. We find from the evidence that the firm carried on their business in the leased premises, had a stock of merchandise there, and that the merchandise was insured as such in the firm name. It will hardly be contended that such a business is not commercial.

The defendants reserve a bill of exceptions to evidence introduced by plaintiff that the defendants, in their firm name, were insured upon their stock of merchandise and upon a shed on the leased premises.

The evidence was offered to prove the occupancy of the premises and the ownership of goods in them by the defendants during the time for which rent is claimed, and in this view is unobjectionable.

For the reasons given, it is ordered and adjudged that the judgment appealed from be affirmed with costs.

Rehearing refused.