## C. M. TAYLOR *v.* JOHN HART.

1. RENT. *Destruction of buildings. Common law. Tenant's right to abatement restricted.*

    At common law, while a lessee of land was entitled to an abatement of rent in case the buildings thereon were destroyed by the act of God or the public enemy, he was not entitled thereto if the destruction was occasioned by accidental fire.

2. STATUTORY MODIFICATION. *Accidental fire. Tenant entitled to abatement. Code 1892, § 2498.*

    The lessee of a plantation, the rental value of which materially depends upon the use of the ginhouse thereon, is entitled to an abatement of the annual rent of the place on the destruction of the ginhouse during his term, by accidental fire, under § 2498, code 1892, wherein it is provided that "a tenant shall not be bound to pay rent for buildings after their destruction by fire, or otherwise, without negligence or fault on his part, unless he have expressly stipulated to be so bound."

3. MEASURE OF RELIEF. *Damages not allowable. Code 1892, § 2498.*

    No damages are allowable; but the tenant is entitled, under the statute, to an abatement of rent in the proportion that the value of the use of the ginhouse and machinery bears to the value of the use of the whole premises.

FROM the circuit court of Yazoo county.

HON. J. B. CHRISMAN, Judge.

In December, 1892, appellant leased to appellee her plantation in Yazoo county by the following instrument:

"STATE OF MISSISSIPPI,  ⎱  I have leased to John Hart, and  *Yazoo county.*  ⎰  his representatives, the land situate in said county, known as the Gum Spring Plantation, from the first day of January, 1893, to the first day of January, 1896, yielding therefor, during the said term, the rent of eleven hundred and fifty dollars per year, payable on the fifteenth day of November in each year during said term.  Said lessee is to keep ditches open and banks cleaned, fences up, and the place in good repair, allowing for wear from use; he shall cut no cypress timber except for use on said premises; he shall return the ginhouse machinery, gin stand and press at the end of his term in as good condition as when received by him, and if said machinery, stand and press shall be injured, damaged or destroyed by the negligence or fault of said lessee, or those in his employ, said lessee shall be liable for the value thereof. . .

" Witness my hand, this twenty-second day of December, 1892.  C. M. TAYLOR."

The appellee went into possession, and in February, 1893, the ginhouse, with its appurtenances, was destroyed by fire, without fault or negligence on his part.  He remained in possession, however, and paid rent for that year.  On November 19, 1894, there being unpaid a balance on account of rent for that year of $350, appellant distrained therefor, and seized twenty bales of cotton.  The appellee replevied the cotton, and to appellant's avowry filed three replications besides the general issue.  The third replication was held bad on demurrer, but appellant's demurrers to the second and fourth were overruled.  The second replication sets up the lease under which appellee held, and avers that the ginhouse and its fixtures constituted a material part of the property leased, and that the rental value

of the same was $350 per year; that the same were, at the time stated, wholly distroyed by fire without fault or negligence on his part; that he had not expressly stipulated to pay rent therefor in such case; and that he was therefore not bound for the amount mentioned in plaintiff's avowry. The grounds of demurrer to this replication were that it disclosed no right to any abatement of rent on account of the destruction of the ginhouse, and that the lease, which was filed with the replication, affirmatively showed that no rent was to be paid for the ginhouse, which was only appurtenant and incident to the land, the real subject-matter of the lease.

The fourth replication set up that, in January, 1894, appellant contracted with appellee to furnish the means to replace the ginhouse, repair the boiler, and put in new machinery, in consideration of his not giving up his lease, and provided appellee would do the work involved in such restoration; that, relying upon this promise and undertaking, appellee agreed not to cancel his lease, and continued the same, and was ready and willing to perform the work aforesaid, at the time agreed upon, but the appellant refused and neglected to do as she had promised, whereby the appellant sustained a loss to the amount of $350, which he was entitled to recoup, etc. To this replication appellant demurred on the ground that the contract set up therein was without consideration and void. Both demurrers being overruled, issue was joined on the replications.

W. S. Taylor, the husband of appellant, who had the management and control of her plantation in the transaction with appellee, testified that the appellee paid the rent of 1893 without objection, and deposed to facts indicating that appellee was dilatory in making, and uncertain of his right to make, any claim for a reduction of rent on account of the destruction of the ginhouse, and that the ginhouse was not considered in computing and fixing the amount of rent for which the place was leased, the rent agreed upon being attributable to the land alone, and that appellee made no offer to surrender the place.

In his own behalf the appellee testified, over appellant's objection, that he would not have rented the land had there been no ginhouse on it; that the annual rental value of the ginhouse and appurtenances was $350, if not more, and showed the profits derived from ginning the cotton produced on the plantation and also that received from other places, and the expense to which he was put in having to haul the cotton elsewhere to be ginned. He further testified that he paid the rent of 1893 without objection, because the Bank of Yazoo City held the note given for the rent of that year, and, having informed this assignee of the note, on inquiry made of him before the fire occurred, that he had no counter claim or set-off, he regarded himself as bound to pay the money to the bank; that, early in the year 1894, he called on W. S. Taylor to rebuild the ginhouse or reduce the rent, and offered to surrender the place; that at first Taylor declined to do either, but finally promised to rebuild during the summer, which promise he wholly failed to keep. The appellee also testified in support of the matters of fact set up in his fourth replication, W. S. Taylor denying in rebuttal, however, that any such transaction as that set out in the replication ever took place. Montgomery and Wilburn, witnesses for plaintiff, testified that the difference in value of the place with and without the ginhouse was $350.

The following instruction was given.

1. "The court instructs for Hart that, if they believe from the evidence that the ginhouse on the leased premises was burned without fault or negligence on the part of Hart, and that it constituted a part of the consideration agreed by the defendant to be paid for its rent, then he is entitled to a deduction in proportion to the loss sustained by him on account of the destruction of the ginhouse, its necessary and proper appurtenances. In arriving at a proper measure of damages, they may consider as a factor what the gin would add to the value of the lease in 1894, and deduct that amount from the rent agreed to be paid for that year."

The following instructions for the defendant were given:

" (1) If the jury find for the plaintiff, they cannot allow him more than the actual damage he sustained by the burning of the gin. (2) They cannot allow plaintiff any profits which he might have made on the ginning of cotton not produced on the leased premises.

The court refused to give a peremptory instruction for the defendant, and its action in this respect, and in granting the first instruction asked by plaintiff, in admitting improper testimony over defendant's objection, and in overruling defendant's demurrer to plaintiff's second and fourth replications, is assigned for error. Verdict and judgment in favor of defendant for seventy-five dollars. Defendant appeals. The opinion contains a further statement of the case.

*Barnett & Thompson*, for appellant.

1. At common law, where land and buildings were leased together, the land only was the subject-matter of the lease, and, for this reason, the destruction of the buildings did not relieve the tenant from the payment of rent. *Lanpher* v. *Glenn*, 33 N. W. Rep., 10; note to *McMillan* v. *Solomon*, 94 Am. Dec., 662; *Graves* v. *Berdan*, 26 N. Y., 496; *S. P. Warren* v. *Wagner*, 75 Ala., 188; 51 Am. Rep., 446. Being in derogation of the common law, § 2498, code 1892, should not be enlarged by construction.

2. Section 2498, code 1892, does not apply to a case where the destroyed building is neither the subject-matter of the lease nor the essential thing which gives the lease its value, and for the use of which the rent is paid. A plantation ginhouse is not within the statute, nothing to the contrary appearing in the lease. *Gates* v. *Green*, 4 Paige Ch., 355; 27 Am. Dec., 68; *Doe, ex dem.*, v. *Burt*, 1 Term Rep., 710; *Coogan* v. *Parker*, 16 Am. Rep., 680.

3. The statute in question does not support the action, for the gin was at most but a part of the subject-matter, and its

destruction was not the destruction of the whole, and the statute only relieves in cases of entire destruction, and in no way provides for abatement on account of partial damage only. Unlike our statute, those of other states, notably New York, Ohio, Minnesota, New Jersey and Connecticut, make provision for partial injury, but even under them it is not allowable for the tenant to retain possession and at the same time demand an abatement in rent.    Under them, he must elect either to abandon his term wholly or retain it at the contract price, or the landlord is required to repair, and the tenant absolved from payment of rent until the repairs are made.    *Johnson* v. *Oppenheim*, 55 N. Y., 280; *Gay* v. *Davey*, 47 Ohio St., 396; *Roach* v. *Peterson*, 50 N. W. Rep., 80; *Miller* v. *Benton*, 13 Atl. Rep., 678; *Dorr* v. *Harkness*, 10 Atl. Rep., 400.

4. The first instruction granted to plaintiff is erroneous in that it is misleading, and might be interpreted by the jury as allowing damages resulting from loss of profits, whereas their inquiry should have been confined, in plain terms, to an ascertainment of the rental value.

*Hudson & Perrin*, for appellee.

1. There is nothing in the language of § 2498, code 1892, to indicate that it was not intended to apply to the destruction of buildings on agricultural lands, and the position of the section in the chapter on landlord and tenant, and its close connection with other preceding and succeeding sections of the same chapter having relation to the lease of such lands, refutes any such idea.    The statute was designed to supply a deficiency of the common law, and afford an adequate remedy to tenants in a community to a large degree agricultural.    The statute should be construed liberally for their benefit.    *Lemonius* v. *Mayer*, 71 Miss., 521.

2. The statutes of New York, Ohio and Minnesota, construed in the cases cited on behalf of appellant, are essentially different from the one under review.

3. The evidence touching appellee's losses in consequence of being deprived of the gin was admissible to show its value to the place, and also under appellee's fourth replication, on which an issue was presented for determination. Such losses might be shown by way of recoupment. *Fowler* v. *Payne*, 49 Miss., 32; *Fowler & Moore* v. *Payne*, 52 Miss., 210.

4. The instruction for appellee objected to was not erroneous. The fair interpretation of it is, that if the gin constituted a part of the consideration for which rent was paid, and it was destroyed without fault or negligence on appellee's part, he was entitled to a reduction for the rental value thereof. It must also be considered in connection with the instructions granted to the appellant.

WHITFIELD, J., delivered the opinion of the court.

"The general doctrine of the common law unquestionably was that, upon a covenant in a lease of land and buildings for a term of years, to pay rent, the rent could be recovered after a destruction of the buildings leased, by accidental fire. The express contract and promise was not discharged by an act for which the lessee was not responsible." But if "the interest of the lessee in a part of the demised premises was destroyed by the act of God or the public enemy, so as to be incapable of any beneficial enjoyment," the rent was, even at common law, apportioned. Such is the accurate statement of the rule at common law, given by Mr. Justice Brown (*Whitaker* v. *Hawley*, 25 Kan., 674), in an opinion of great learning and power, exposing the absurdities of the common law rule on this general subject, especially as applied to the conditions of society existing with us. See, also, *Fowler* v. *Payne*, 49 Miss., 32, 79; *Jemison* v. *McDaniel*, 25 Miss., 83; Taylor's Landlord and Tenant, § 375. A universal exception to this rule in this country was established where the lease was of a particular room or apartment in a building, or a building merely, without any land, in which case the total destruction of the room

or apartment or building terminated the lease, and released the tenant from the payment of subsequently accruing rent. See the learned and exhaustive note to *Porter* v. *Tull*, 33 Pac. Rep., 965; note to *McMillan* v. *Solomon*, 94 Am. Dec., 662; 12 Am. & Eng. Enc. L., 742, and authorities cited therein; *Lanpher* v. *Glenn et al.*, 33 N. W. Rep., 10.

Perhaps the inflexible rigor of the general common law rule is nowhere more strongly put than by Brickell, C. J., in *Warren* v. *Wagner*, 75 Ala., 202, where the lease, being of lands and tenements, accompanied with the right of quarrying stone upon the lands during the term, and the injury complained of being the destruction of the limekiln, which, it was conceded, constituted the principal consideration for the lease, it was held, on the common law, the lessee was bound for the whole rent. This rule has often been assailed as utterly repugnant to justice and reason, never more forcibly than by Justice Brown in the case of *Whitaker* v. *Hawley*, *supra*, and Chancellor Walworth, in *Gates* v. *Green*, 4 Paige, 354; and so harsh was the operation of the rule that, in many states (all of whose statutes are cited in the note to *Porter* v. *Tull*, 33 Pac. Rep., 965) statutes have been passed for the purpose of modifying or abrogating it. Many of these statutes—such as those of New York, Ohio, Connecticut, New Jersey and Minnesota—expressly refer to "lessees or occupants of any building . . . which shall be so destroyed or injured," etc., providing that in such case the lessee may surrender possession, etc., of the leasehold premises. It is clear that all such statutes relate to buildings, and not to lands; and all the decisions to which we are referred on the proposition that the appellee should have surrendered possession of the premises if he wished to avoid the payment of rent accruing subsequently to the fire, are constructions of such statutes, and are in cases where buildings in cities were destroyed. Such are *Roach* v. *Peterson*, 50 N. W., 80, 81, the buildings being in Minneapolis; *Lanpher* v. *Glenn*, 33 N. W., 10, 11, the buildings being in St. Paul; *Gay* v. *Davey*, 47

Ohio St., 396, the buildings being in Cincinnati; *Johnson* v. *Oppenheim*, 55 N. Y., 280, the buildings being in New York; and *Miller* v. *Benton*, 13 Atl. Rep., 678, the buildings being in New Haven, in which last case, the court remark upon the use of the word "tenement" as a word applicable in New Jersey, "in popular and legal meaning, to parts of a building leased without the land upon which the buildings stand," as well as to land (p. 680).

Our statute, § 2498, code of 1892, upon the construction of which this case depends, has no such limiting words. Its benefits are for "a [that is, any] tenant." It contains no provisions for the surrender by the tenant of the leased property. Where the subject-matter of the lease is a building merely, the tenant may justly be required, in the states whose decisions are cited *supra*, to "quit and surrender possession" of the demised premises, if he would escape the payment of subsequently accruing rent. But there can be no reason, in the case of a farmer whose cotton crop, in this state, it may be, is opening in the field, in requiring him, after the expenditure of large sums on an annual crop, to surrender possession of the premises and abandon his crop in order to claim an apportionment of the rent where a ginhouse and machinery, constituting an essential part of the subject-matter of the lease, have been destroyed by fire, if, under our statute, he is otherwise entitled to apportionment. Our condition as an agricultural community is wholly different from that of the people of the manufacturing states, and this difference in conditions was doubtless in the mind of the compiler of the code of 1880, in which this statute first appears, and may well have occasioned the difference in the phraseology—a difference aptly suiting the law to the actual conditions of our people, by far the larger part of whom are agriculturists.

The farm in this case was a large and valuable one, one hundred and sixty bales of cotton being grown thereon in the year 1894. Certainly no building could have been more essential

to the value of the use of this leased plantation than the steam gin of the kind and value shown in the testimony. The appellee testifies that he would not have rented the place without the gin-house and machinery. The reasonable proportion of the whole rental of $1,150 which the ginhouse and machinery constituted, is shown to have been $350 by two witnesses, and the jury allowed only $275.

The clear tendency of all the modern decisions in our states has been to so modify the rule of the common law as to work out a result just and equitable in the situation. At common law, "in the hiring of chattels, though the terms be as absolute and positive as those of a real estate lease, their absolute destruction, without the fault of the hirer, terminated the contract," and it is well said by Mr. Justice Brown, in the case cited, that "the clear tendency of the rulings has been to do away with the common law technicalities concerning real estate, and to bring the rules of the common law more in harmony with those respecting personal property;" and that "the distinctions growing out of the feudal system are disappearing, and this distinction between the lease of real property and the hiring of chattels is one which, sooner or later, will cease to exist." In the same spirit is *Coogan* v. *Parker*, 16 Am. Rep., 679, 680.

We must give this statute a construction suited to the needs of our people, and in giving it the construction which we do, holding that it applies to buildings rural as well as urban, and that in case of the destruction of either kind by fire without the fault of the tenant, there should be an abatement of so much of the rent as was paid "for the building," we think we do this. It is, we think, somewhat significant, too, that §§ 2497 and 2498 of the annotated code are placed now in the law relating to landlord and tenant, and immediately succeeding sections furnishing remedies for enforcing agricultural liens.

In the code of 1880 they stood in a connection perfectly con-

sistent with the view here announced of the statute, though not so markedly so as they do in their present connection.

We have given the subject a most thorough examination, due to its importance, and are satisfied that the construction of § 2498 herein announced is the one most in harmony with the language of the statute, looking to the old law, the evil and the remedy, with justice and with the peculiar condition and needs of our agricultural population. We refer to the following authorities as bearing out the reason and spirit of our views, in addition to those already cited: "Rent is compensation for the use, and implies the continued existence of the property to be used," says Justice Brown, in the case referred to, page 691. To the same effect, in stronger language, is *Porter* v. *Tull*, 33 Pac. Rep., 965; *Graves* v. *Berdan*, 26 N. Y., 498; *Gates* v. *Green*, 4 Paige Chy., 355; *Coogan* v. *Parker*, 2 S. C., 255; *Penn* v. *Kearney*, 21 La. Ann., 21; *Levy* v. *Dyess*, 51 Miss., 510, as to the tendency of our decisions. *Willard* v. *Tillman*, 19 Wend., 358, a striking case, where, even in New York, prior to the act of 1860, in a case where the lease was of three rooms and a strip of land two hundred feet in length, and the buildings were wholly destroyed, it was held that the interest in the land remained, and was capable of beneficial enjoyment, but that the tenant was entitled to a *pro rata* abatement of the rent, and would only be held "for an amount which would bear to the entire rent a proportion which the value of the use of the remaining premises bore to the whole" at the rate of the annual rent. See, also, 120 U. S., 707; 2 S. C., 255; 4 Paige Chy., 355; 21 La. Ann., 21; and specially see the masterly opinion in *Coogan* v. *Parker*, 2 S. C., 255, s.c. 16 Am. Rep., p. 659, a case noticing, as does Mr. Justice Brewer in the case cited *supra*, the distinction made at common law between destruction of the leased premises by the act of God or the public enemy and by accident, as to the reasonableness of which distinction we express now no opinion. See 16 Am. Rep., pp. 666, 667. The distinction seems to have obtained at common law, whether the accidental fire was due to negli-

gence of the lessee or not. The distinction seems to be approved in *Coogan* v. *Parker* but repudiated in *Whitaker* v. *Hawley, supra.* Our statute settles the matter for us. In this case (*Coogan* v. *Parker*) the court say on the general subject, in the absence of any statute at all: "Rent is defined to be a certain yearly profit . . . in retribution for the use. The existence of rent, therefore, presupposes land, and a possible usufruct, for there can be no just demand for retribution or compensation for that which does not exist. An agreement to pay rent, whether a simple contract or a covenant in form, is controlled by the nature of rent. If the conditions under which rent accrues do not exist, there is nothing for either an agreement or a covenant to pay rent to rest upon. . . . When parties contract together in terms that import the relations expressed by the foregoing definitions, it is obvious that their contract ought to receive such a construction as to preserve the rights and equities lying at the foundation of such definitions. The equity of a contract is its life, springing out of the idea of a reciprocity of benefits and obligations. . . . A contract is the law of the parties; its equity is the reason of that law, and it is not a mere figure of speech to say that when the reason ceases the law ceases also." This equity—reason of the law—as related to this subject-matter, is for us happily crystallized in § 2498 of the code of 1892.

We do not think the first instruction subject to the criticism made of it. The principle announced—not as clearly as it might have been, but substantially—is that, if the ginhouse constituted a material part of the consideration of the lease, on its destruction by fire, without the lessee's fault or negligence, the rent should be abated in the proportion that the value of the use of the ginhouse and machinery bore to the value of the use of the whole premises. It was not intended to authorize "damages," and, fairly construed, does not do so. The instruction is inartificially drawn, but we do not think it could have misled the jury. We find no error.      *Affirmed.*