EMILY F. CARLEY, PLAINTIFF AND APPELLEE, v. LIBERTY HAT MANUFACTURING COMPANY, DEFENDANT AND APPELLANT.

Submitted December 3, 1909—Decided February 21, 1910.

1. It is a well established rule of construction that statutes in derogation of the common law are to be strictly construed, and while a statute which is plainly inconsistent with the common law will prevail, yet statutes are not presumed to make any alteration in the common law further or otherwise than the clear import of the statutory language necessarily requires.

2. A tenant of lands, with the buildings thereon, under a lease creating a yearly tenancy at a rental payable monthly in advance, is liable for a monthly installment of rent which fell due prior to the accidental total destruction of the buildings by fire, notwithstanding the act of March 5th, 1874. *Pamph. L.*, *p.* 27; *Gen. Stat.*, *p.* 1923.

On appeal from the Second District Court of the city of Newark.

Before Justices SWAYZE, TRENCHARD and PARKER.

For the appellant, *Lowy, Lowenstein & Leber.*

For the appellee, *Charles L. Williams,* and *Sommer, Colby & Whiting.*

The opinion of the court was delivered by

TRENCHARD, J. This is an appeal by the defendant from a judgment rendered by the judge of the Second District Court of the city of Newark, sitting without a jury, in favor of the plaintiff for $150, with costs.

The case below arose on the following facts, as set forth in the agreed state of the case:

On the 1st day of July, 1907, the plaintiff demised to the defendant, by lease in writing under seal for the term of one year from that date, certain lands and premises with the buildings thereon and appurtenances thereto, in the city of Newark, at the rental of $1,800 a year, payable in monthly installments of $150 in advance, on the first secular day of each month. In and by the lease the defendant agreed to pay the plaintiff the rental at the time and in the manner as hereinabove stated, and it was therein provided that the lessee might renew the same from year to year. The lease was renewed by the terms thereof on the 1st day of July, 1908, for one year. The defendant remained in possession of the demised premises until May 8th, 1909, when, without the fault of the defendant, the buildings thereon were totally destroyed by fire. Since the fire the defendant has not occupied the premises.

The rent for the month of May, which according to the terms of the lease, was due and payable on the 1st day of May, was, up to the time of the fire, not paid, and some time thereafter, but before the commencement of this action, the defendant made tender to the plaintiff of eight days' rent,

which tender was refused. This suit was for the rent for the month of May. The defendant filed a recoupment against the plaintiff's demand claiming damages for non-occupation of the demised premises from the 8th day of May to the 1st day of June. The judgment was for the plaintiff for the full amount claimed.

The question involved in the defendant's appeal, namely, as to whether a tenant of lands, with the buildings thereon, under a lease creating a yearly tenancy at a rental of $1,800 a year, payable monthly in advance, is liable for the monthly installment of rent which fell due prior to the accidental destruction of the buildings by fire, involves a construction of the supplement to our Landlord and Tenant act, approved March 5th, 1874. *Pamph. L., p.* 27; *Gen. Stat., p.* 1923. That act provides: "That whenever any building or buildings erected on leased premises shall be injured by fire without the fault of the lessee, the landlord shall repair the same as speedily as possible, or in default thereof, the rent shall cease until such time as such building or buildings shall be put in complete repair; and in case of the total destruction of such building or buildings by fire or otherwise, the rent shall be paid up to the time of such destruction, and then, and from thenceforth, the lease shall cease and come to an end; *provided,* always, that this section shall not extend to or apply to cases where the parties have otherwise stipulated in their agreement of lease."

The defendant contends that a fair construction of that statute implies an apportionment of the rent. We are referred to *Rich* v. *Smith,* 121 *Mass.* 328; *Porter* v. *Tull,* 6 *Wash.* 408; *Taylor* v. *Hart,* 73 *Miss.* 22; 30 *L. R. A.* 716, and *Coogan* v. *Parker,* 2 *S. C.* 255. The tendency of these cases is to support the defendant's position, but we are not content to follow them.

We are of the opinion that the proper construction to be given the statute is to relieve the tenant from liability for rent which should accrue after the destruction of the premises, and not from the payment of rent which had accrued previous to such destruction.

The statute is in derogation of the common law. By the rule of the common law, where land, together with buildings or improvements thereon, is demised, the accidental destruction of the buildings or improvements does not relieve the tenant from liability for future rent, but his liability therefor continues to the same extent as if the destruction of the buildings or improvements had not occurred. This rule is too well recognized to need extended citation. The United States Supreme Court, in the case of *Sheets* v. *Shelden,* 7 *Wall.* 416, 423, said: "If a demised house be burned down by accident the rent does not cease. The lessee continues liable as if the accident had not occurred." The reason for this rule is succinctly stated in *Jones Land. & Ten.,* §§ 675, 677, as follows: "The destruction by fire of buildings upon leased premises does not relieve the lessee from his obligation upon an express covenant to pay rent * * *. The general rule of the common law as stated above is predicated upon the assumption that an interest in the land or soil upon which the burned buildings stood passed under the lease."

Again, Mr. Justice Rosekrans, in *Graves* v. *Berdan,* 26 *N. Y.* 498, said: "Where the lessee takes an interest in the soil upon which a building stands, if the building is destroyed by fire, he may use the land upon which it stood, beneficially, to some extent, without the building, or he may rebuild the edifice; but where he takes no interest in the soil, as in the case of a demise of a basement, or of upper rooms in the building, he cannot enjoy the premises in any manner after the destruction of the building, nor can he rebuild the edifice," holding that there could be an apportionment in the latter case, but not in the former.

Being in derogation of the common law the statute is to be strictly construed and is not to be presumed to make any alteration in the common law further or otherwise than the clear import of the statutory language necessarily requires. *Coles* v. *Celluloid Manufacturing Co.,* 10 *Vroom* 326; affirmed, 11 *Id.* 381; *State* v. *Lash,* 1 *Harr.* 380; *Tinsman* v. *Belvidere Delaware Railroad Co.,* 2 *Dutcher* 148.

Our statute in question, in the respect now involved, has never been construed by our courts. But similar statutes in other jurisdictions have been construed as not relieving the tenant from liability for rent already accrued under the circumstances of this case.

The provisions of the New York statute (*Gen. Laws, ch. 46*, § 197) are as follows: "Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises and of the land so leased or occupied; and he is not liable to pay to the lessor or owner rent for the time subsequent to the surrender."

In the case of *Craig* v. *Butler*, 31 *N. Y. Supp.* 963; *affirmed*, 156 *N. Y.* 672, there was a written lease for three years by which a rent of $1,850 a year was reserved, payable $200 on delivery of lease, $150 on May 1st, June 1st, July 1st and August 1st in each year and the balance ($1,050) on September 1st of each year. On September 1st at six o'clock in the morning the premises were totally destroyed by accidental fire. Suit was brought by the landlord to recover the $1,050 rent, payable in advance on September 1st. The statute then in force (*Laws* 1860, *ch.* 345) was similar to the present statute there and provided: "The lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements or any other cause as to be untenantable and unfit for occupancy, shall not be liable to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the lands so leased or occupied." Construing the statute the court said: "The sole question in the case is whether the statute referred to * * * applies to relieve him (the defendant)

FEBRUARY TERM, 1910. 321

50 Vroom. Carley v. Liberty Hat Mfg. Co.

from that payment (the $1,050 due September 1st). *Of course the purpose of the statute is to relieve the tenant from payment of rent which accrued after the destruction of the building, not from the payment of rent which was due but unpaid at that time.* So that the question here is narrowed to the inquiry whether, under the terms of this lease, the rent sought to be recovered had *accrued* when the fire occurred. * * *. We believe that question is to be answered in the affirmative * * *. The plaintiff, we think, may stand upon the terms of the lease, and insist that the rent sued for had *accrued* before the destruction of the property by fire, and, consequently, that the statute does not relieve the defendant from its payment."

The case of *Werner* v. *Padula,* 63 *N. Y. Supp.* 68; *affirmed,* 167 *N. Y.* 611, involved a lease of premises for one year from March 1st, 1899, at the rate of $2,200 for the term, payable $1,200 on delivery of the lease, $500 on June 15th, 1899, and $500 on July 5th, 1899. The lease contained the following provision: "That in case the building or buildings erected on the said premises hereby leased shall be partially damaged by fire, the same shall be repaired as speedily as possible, at the expense of said party of the first part; that, in case the damages shall be so extensive as to render the building or buildings untenantable, the rent shall cease until such time as the buildings shall be put in complete repair, but, in case of the total destruction of the premises by fire or otherwise, *the rent shall be paid up to the time of such destruction,* and then and from thenceforth this lease shall cease and come to an end; *provided,* however, that such damage or destruction be not caused by the carelessness, negligence, or improper conduct of the party of the second part (the lessee), her agents, servants or employees." Under this lease the first installment was paid as provided for on the delivery of the lease. On May 26th, before the date for the next payment provided for, the premises were totally destroyed by accidental fire and the plaintiff (the lessee) after destruction of premises surrendered them to defendant, claiming that under the provisions of the lease the defendant

must refund the unearned rent. The court said: "*As the terms of the lease and the provisions of the statute (Gen. Laws, ch. 46, § 197) amount to precisely the same thing, and have exactly the same meaning, they should receive precisely the same construction* * * *. The rights given to the tenant by the provisions of this statute are fixed in this state. *If, by the terms of his lease, rent is to be paid in advance, the tenant comes under an absolute engagement to pay it on the day fixed,* and he is not relieved from that engagement by the fact that the property is destroyed by fire, and he is liable to pay the rent due in advance, even though the destruction takes place on the very day it falls due. This was the rule laid down in *Craig* v. *Butler*, 31 *N. Y. Supp.* 963, which was affirmed in the Court of Appeals on the opinion of the general term (156 *N. Y.* 672). The case of *Hecht* v. *Heerwagen*, 35 *N. Y. Supp.* 1090 (Common Pleas of New York city and county), to the contrary, must be deemed to be overruled by *Craig* v. *Butler, supra.* The principle in Craig *v.* Butler is laid down in the case of *Gugel* v. *Isaacs,* 48 *N. Y. Supp.* 594. Under the statute, therefore, the plaintiff would have been compelled to pay the first installment of rent, although the premises had been destroyed on the day after his lease was signed * * *. When, therefore, on the day the lease was signed, she paid the rent in accordance with its terms, *that payment was final and absolute,* and she was not entitled to recover it back, in the event of the destruction of the premises before the whole of that rent had been earned."

Under a similar statute the same result has been reached by the courts of Ohio. In the case of *Felix* v. *Griffiths,* 56 *Ohio St.* 39, the lease in question contained the following stipulation which, as stated by the court, is a virtual incorporation of section 4113, Revised Statutes: "It is agreed by and between the parties to this lease that in case any building now standing on said premises shall be destroyed or injured by the elements, or other cause, so as to be unfit for occupancy, without any fault or neglect on the part of the second party (the lessee), said second party shall not be lia-

ble to pay rent for said premises from and after the time said second party shall have surrendered possession of said premises to said first party (the lessor)." The lease provided for a rental of $1,500 a year, "payable $125 a month on the ninth day of each and every month in advance." On the thirteenth of the month the premises were destroyed by accidental fire and the plaintiff (the lessee) sued to recover a proportionate part of the rent paid in advance. The court said: "The parties had before them the subject of the lessee's liability in case of the destruction of the buildings, and undertook to stipulate with reference to that contingency. They also had before them the fact that the lease required the lessee to pay each month's rent in advance which would naturally suggest a condition in which there might be a destruction of the buildings after the payment, and before the expiration of the month. In this situation, they selected the terms in which the exemption from liability should be couched, and, in distinct language, limited that exemption to exoneration of the lessee from payment after the surrender; leaving, as it seems to us, a plain inference that, where paid before the surrender, the ordinary rule (of the common law) would apply * * *. It is the court's province to enforce contracts, not to make them * * *. The latter (the lessor) has a right to stand on the contract as it was made and not be required to accept a contract which the lessee now wishes he had obtained. As to the monthly installments *the contract is entire;* and we think that, where an installment was once paid, in conformity with the terms of the contract, it became the money of the lessor absolutely, and was not subject to be recovered back at the election of the lessee."

It should be noted in connection with these cases that our statute is particularly indicative of the meaning and effect which we give it by reason of this language: *"Provided,* always, that this section shall not extend to or apply to cases where the parties have otherwise stipulated in their agreement of lease." We think that the parties have here "other-

wise stipulated" by reason of the provision in the lease that the rent should be paid monthly *in advance.*

We also think that our construction of the statute is supported by a consideration of the rulings of the courts in cases of surrender, eviction, dispossession and condemnation, in which it is uniformly held that release from liability operates only as to subsequently accruing rent, and not from rent which has accrued prior to the time of such surrender, eviction, dispossession and condemnation.

In *Learned* v. *Ryder,* 61 *Barb.* 552, 556, there was a lease of premises for one year at a rental of $10,000 per year, payable in equal quarterly payments in advance on the first day of each quarter, beginning November 1st. The premises were surrendered on November 30th. The plaintiff sued for the rent for the entire quarter, which, according to the terms of the lease, was payable November 1st. The court, by Presiding Judge Ingraham, said: "The defendant asked the court to charge that if there was a surrender on the 30th of November, the lease became cancelled and of no effect. This request was too broad * * *, the lease did not become cancelled, it ceased only from the day of surrender. The cause of action for that quarter *accrued* on the 1st of November preceding * * *. The judgment should be affirmed."

In *Hunter* v. *Reiley,* 14 *Vroom* 480, there was a lease of premises for one year from April 1st, 1879, at $1,000 a year, payable $500 on execution of lease, $250 on August 1st, and $250 on September 1st. The first two installments were paid, the last was unpaid. Defendant was evicted November 1st. The court said: "But the eviction, to have the effect of suspending the rent, must be effected before the rent becomes *due,* for the rent already accrued and overdue is not forfeited by the eviction. * * * The rule is the same, although the rent is payable in advance and the eviction occurs before the expiration of the period in respect to which the rent claimed accrues. (Citing *Giles* v. *Comstock,* 4 *N. Y.* 270.) The facts in this case show that the rent sued for became due on the 1st day of September, and was the balance of rent due for the remainder of the term ending on the suc-

ceeding 1st day of April; but the eviction was in November, two months after this rent had become due; it was, therefore, no defence for the demand of rent made in this suit."

Of course in the cases of eviction the tenant has a remedy for the wrongful act of the lessor by a separate action against him for violation of the covenant for quiet possession. But the cases of eviction are useful, nevertheless, in showing the construction placed by the courts on provisions for the payment of rent in advance.

In *Bernstein* v. *Heinemann,* 51 *N. Y. Supp.* 467, 469, the court said: "It is insisted by the defendant that she is not liable for the rent in question, because, although it was due in advance, she was dispossessed before the month expired for which it was payable; but the authorities hold that where rent is payable monthly in advance, under a lease for one year, a landlord is entitled to a whole month's rent, notwithstanding the tenant is dispossessed by virtue of a warrant issued in summary proceedings before the expiration of a month for default in payment."

In the case of *Gugel* v. *Isaacs,* 48 *N. Y. Supp.* 594, the court held that where, in proceedings by a city to acquire title to real property for public purposes, an award is made to a tenant thereof for the full installment of rent, payable in advance under his lease, for the period within which the title vests in the city, the landlord may recover from the tenant the full amount of such installment, although, from the date of vesting, the tenant has attorned to and paid rent to the city.

For these reasons, we are of the opinion that the construction of the statute *sub judice* must operate to relieve a tenant only from rent which accrues after the destruction of the premises by fire, and that a tenant of lands, with the buildings thereon, under a lease creating a yearly tenancy at a rental payable monthly in advance, is liable for a monthly installment of rent which fell due prior to the accidental total destruction of the buildings by fire.

The result is that the judgment of the court below will be affirmed.